## COMMONWEALTH *vs.* EDWARD H. MURPHY (and a companion case[1]).

Barnstable.    November 20, 1972. — January 23, 1973.

Present: ROSE, GOODMAN, & ARMSTRONG, JJ.

*Arson. Accessory.*

At the trial of indictments for burning a dwelling house, which was unoccupied at the time of the fire, testimony of a detective attached to the State Fire Marshal's office that the building was a two-story wooden frame dwelling with furniture, fixtures, foodstuffs and other objects, a fireman's characterization of the building as a "house" or "home", and an observer's testimony that he knew the people who lived in the building and that they were not home at the time of the fire warranted a finding that the building was a dwelling house under G. L. c. 266, § 1, as amended by St. 1932, c. 192, § 1. [75]

Direct evidence at the trial of an indictment for burning a dwelling house, contradicting all statements to police by the defendant, that while walking from the house toward an automobile the defendant stopped, turned around, and "made a motion like throwing something," and that a few seconds later an incendiary device broke through a window and exploded and set fire to the house warranted a finding of guilty. [75-76]

At the trial of an indictment for burning a dwelling house, evidence merely that the defendant was the elderly well-dressed passenger seen in a parked automobile immediately before it was driven from a parking lot adjacent to the house by one who had just thrown an incendiary device into it which exploded and set fire to the house, that when the automobile was stopped by a police officer some thirty minutes later the defendant was in the driver's seat and the thrower of the device was its only other occupant, and that the defendant then stated that "they weren't sure" where they had come from and that "they were kind of lost . . . [and] didn't know where they were" did not warrant a finding that the defendant was guilty. [76-77]

---

[1] Commonwealth *vs.* Benjamin F. Tilley.

Two INDICTMENTS found and returned in the Superior Court on April 7, 1971.

The cases were heard by *Sgarzi,* J.

*Joseph J. Balliro* for the defendants.

*Philip A. Rollins,* District Attorney (*W. James O'Neill,* Assistant District Attorney, with him), for the Commonwealth.

ROSE, J.   The defendants, Murphy and Tilley, after trial subject to G. L. c. 278, §§ 33A-33G, were found guilty by the trial judge sitting without a jury on separate indictments of burning a dwelling house. G. L. c. 266, § 1. Each defendant appeals, and argues only an assignment of error based on the trial court's denial of his motion for judgment of acquittal. Each contends that the Commonwealth failed to introduce a sufficient amount of evidence to warrant a finding of guilty. Therefore, we review the evidence in detail.

There was testimony that on November 7, 1970, at about 7:30 P.M., Michael D. Augusta and Wayne Stone were in an automobile in the Bristol Beach parking area in Falmouth. There they observed a light blue Cadillac automobile with a dark roof in the parking lot about eighty feet from their car with one person sitting on the passenger side. They then observed a tall man with white hair coming from the direction of a house adjacent to the parking lot about 180-200 feet away. The man was walking toward the Cadillac, then stopped, turned around, and "made a motion like throwing something." Augusta testified that although he could see the man turn his body, he could not see the top of his hand, nor could he see anything leave his hand. The man was approximately 60 to 70 feet from the house. A few seconds later Augusta heard an explosion and saw a big flame on the outside of the house that seemed to disappear inside the house. He did not hear any breaking of glass. He then observed the man walk quickly toward the Cadillac, get in on the driver's side, and drive from the parking lot. When asked why he did not enter the dwelling to see what happened, Augusta stated that he knew the people who lived there, and he knew they were not home at the time.

There was further testimony that Augusta and Stone drove about 50 yards down the road in the same direction as the Cadillac and stopped at a house to call the fire department but found no one home. They then drove down Menauhaunt Road, turned to Worcester Court, and saw the same automobile that had been in the parking lot now going at a slow rate of speed. Augusta observed that the first three numbers of the automobile license plate were "L85" and also observed the two men in the automobile. Augusta testified that he got a "good look" at the operator but could not identify the passenger. Stone described the two men in the automobile as elderly and well dressed. Later that evening both witnesses observed the same automobile at the Bourne state police barracks. Later Augusta described the operator to the police as an elderly white-haired man attired in a suit. At the same time the passenger was described as elderly and also wearing a suit.

State police officer Burt W. Wyatt testified that as a result of a police radio call he was positioned at the Bourne rotary, where at around 8 P.M. he stopped a 1969 light blue Cadillac with a black top and license no. L85-604. The only two occupants of the car were the defendant Murphy, who was wearing a blue blazer and gray pants and the defendant Tilley, who was dressed in a brown suit. Officer Wyatt further testified that he asked the driver Tilley for his license and registration and that when asked where they were coming from, Tilley stated, " . . . they weren't sure, they were kind of lost. They didn't know where they were." They volunteered to follow the officer to the barracks.

State police Detective Lieutenant Shay testified that he had been attached to the State Fire Marshal's office and had been investigating the causes of fires for approximately 35 years. He indicated that after receiving the *Miranda* warnings Murphy stated that he and Tilley had been riding since morning without getting out of their automobile. Murphy claimed to be unfamiliar with the Cape and that he had never been to Falmouth. He further stated that he was on the Cape looking for a real estate broker named McDermott.

Later that evening Lieutenant Shay went to the scene of the fire. There he noticed a circular hole approximately twelve by fourteen inches in an upper pane of glass on the rear door. There was no broken glass or burning on the outside. He described the premises as a two-story wooden frame dwelling with furniture, fixtures, foodstuffs, tables, chairs, carpets, dishware, and so forth. He also noted a magazine on the living room table. He testified that there was not a great deal of damage to the exterior of the building and, based on his years of experience, that the damage arose from a fire that started inside the building. In his opinion, there was no question that the fire started inside the house and was an incendiary or set fire.

Leighton F. Peck, chief of the Falmouth fire department, testified that he took soil samples from the approximate area where the individual was seen making the throwing motion.

Paul Gonzalves, a patrolman in the Falmouth police department, testified that Murphy complied with his request that he be allowed to remove sand samples from the sole section of Murphy's shoe.

Richard W. Flach, a special agent of the Federal Bureau of Investigation, employed as a geologist for the past twenty-eight years, testified that he analyzed the samples of soil removed from the area adjacent to the burned dwelling and the sand removed from the sole of Murphy's shoe. He also testified that on January 11, 1971, he took sand samples from several different locations on Cape Cod, made comparisons of all samples, and concluded that the sand from Murphy's shoe and the sand from the parking area were alike in their physical characteristics and mineral content. He stated that the sand from Murphy's shoe came from the area outside of the burned dwelling, and that it could not have come from any other areas from which he had taken sand samples. He further testified that this sand could only have come from another area having all of the same mineral characteristics, a situation which he considered to be "almost impossible." On cross-examination he qualified that opinion to "extremely unlikely."

Edward A. Denton testified that as a member of the Falmouth fire department he went to 59 Menauhaunt Road on November 7 at 7:45 P.M. He found a circular hole approximately ten inches in diameter in the upper portion of the door. Upon entering the dwelling through that door he noticed that most of the flames were at the base of the upstairs staircase which is directly in front of the door. He characterized the building as a "house" or "home."

The defendants' motions for judgment of acquittal raise two issues. The first relates to whether there was sufficient evidence that the burned building was a dwelling house. A review of the above evidence leads us to conclude that there was. We believe that the testimony of Lieutenant Shay, Edward Denton, and Michael Augusta was sufficient to establish that while the building might have been unoccupied at the time of the fire, it was a dwelling house within the meaning of G. L. c. 266, § 1.

In light of the 1932 amendment of this statute, St. 1932, c. 192, § 1, which inserted the words "occupied or unoccupied," this finding is sufficient and consequently makes inapplicable all of the cases cited and argued by the defendants concerning the need to prove *animus revertendi* (intent to return) to an unoccupied dwelling house.

The second question with which we are confronted is whether there was sufficient evidence to warrant the denial of the defendants' motions for judgment of acquittal.

With regard to the defendant Murphy, we first mention that all of his statements to the police were contradicted by direct evidence and therefore could have been found by the trier of fact to show consciousness of guilt. *Commonwealth* v. *Bonomi,* 335 Mass. 327, 346-348. While this alone cannot support a finding of guilt, nevertheless the evidence was of such a nature that a trier of fact "might properly draw inferences, not too remote in the ordinary course of events, or forbidden by any rule of law, and conclude upon all the established circumstances and warranted inferences that the guilt of the defendant was proved beyond a reasonable doubt." *Commonwealth* v. *Vellucci,* 284 Mass. 443, 445, and cases cited. This is just such a case. The judge could

have found that Murphy was the man at the scene, that he had an incendiary device in his hand when he made the motion towards the house, that the device broke through the window in the rear door and exploded and set fire to the house. No testimony before the judge, except Murphy's statements, is inconsistent with this view. We hold, therefore, that the judge correctly denied the motion for judgment of acquittal with regard to the defendant Murphy.

However, the evidence against the defendant Tilley leads us to a different conclusion. The trier of fact could have found that Tilley was the elderly well-dressed passenger in the automobile when the defendant Murphy drove the vehicle from the parking lot. When the automobile was stopped thirty minutes later, Tilley was in the driver's seat. The only other evidence indicating Tilley's possible connection was his statement to the police that he and Murphy were lost.

Even if it be assumed that Tilley's statement evidenced his consciousness of guilt, *Commonwealth* v. *Bonomi,* 335 Mass. at 348, and that he was present at the scene, even though there is no direct evidence to that effect, this alone is not enough to find guilt. There is a long line of cases holding that mere presence at the scene of the commission of the wrongful act, together with failure to take affirmative steps to prevent it, does not render a person liable as principal. *Commonwealth* v. *Knapp,* 9 Pick. 496. *Commonwealth* v. *Benders,* 361 Mass. 704. What must be proved is that the defendant "in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed." *Bailey* v. *United States* 416 F. 2d 1110, 1113 (D. C. Cir.), quoting *United States* v. *Peoni,* 100 F. 2d 401, 402 (2d Cir.) and cited in *Commonwealth* v. *Benders, supra.*

We believe that Tilley's driving the vehicle, not away from the scene, but some 30 minutes later, is an activity too remote from the actual burning to come under the scope of participation as set out in the *Bailey* case.

There are several other deficiencies in the Commonwealth's evidence. Such deficiencies were delineated in *Commonwealth* v. *Perry,* 357 Mass. 149. Even if it be argued that Tilley knew before the fire that arson would be committed, "mere knowledge that a crime is to be committed, even when coupled with subsequent concealment of the completed crime, does not make one guilty as an accessory before the fact or as a principal to the crime about which he has knowledge." *Commonwealth* v. *Perry, supra,* at 151. *Commonwealth* v. *DiStasio,* 297 Mass. 347, 358-361. In the instant case there has not even been a demonstration of knowledge by Tilley either before or after the arson.

The deficiency in the Commonwealth's evidence extends further in that it does not show the defendant Tilley counseled, hired or otherwise procured the defendant Murphy to commit the arson or that he did any other act which would make him an accessory before the fact to such crime. Nor was there showing made by the Commonwealth "that there was an agreement for the defendant to stand by, at or near the scene of the crimes to render aid, assistance or encouragement to the perpetrators if it became necessary, or to assist them in making their escape from the scene." *Commonwealth* v. *Perry,* 357 Mass. at 151.

Furthermore, no evidence was introduced to indicate that the position of the parked automobile provided a vantage point to the person occupying the passenger seat in the automobile to act as lookout or to be in a position to "render aid, assistance or encouragement" to Murphy, nor that the person stepped out of the automobile to place himself in an improved position to accomplish these objectives.

The instant case falls short of the required proof of involvement set out in the *Perry* case. At most the evidence introduced creates a conjecture of suspicion that Tilley may have been a participant in the crime. That is not enough to meet the standard necessary to support a finding of guilty.

It follows that the entry will be as to the defendant

Murphy, judgment affirmed; and as to the defendant Tilley, judgment reversed, finding set aside.

*So ordered.*