COMMONWEALTH *vs.* MARIA RAPOSO.[1]

Bristol. January 6, 1992. - July 21, 1992.

Present: LIACOS, C.J., ABRAMS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Accessory and Principal. Child Abuse. Parent and Child*, Duty to prevent harm. *Rape. Indecent Assault and Battery.*

Discussion of cases setting forth the nature of the evidence that would support a conviction as accessory before the fact to a felony under G. L. c. 274, § 2. [184-185]

Discussion of cases in which a parent was found criminally responsible for failing to take reasonable steps to protect his or her child. [185-188]

The terms of G. L. c. 274, § 2, setting forth the elements of the crime of being an accessory before the fact to a felony, require proof of not only knowledge of the crime and a shared intent to bring it about but also an affirmative act to bring it about; a mere omission to act cannot result in criminal liability. [188] ABRAMS, J., concurring.

A parent could not be convicted under G. L. c. 274, § 2, as an accessory before the fact to rape and indecent assault and battery on her mildly retarded daughter, in circumstances where the evidence did not demonstrate beyond a reasonable doubt that the parent aided, counselled, hired or procured the rapist, or that she in any way participated in the crime, even though the evidence did show that the parent knew in advance of the rapist's intent and that she failed to act to protect her daughter. [188-189] ABRAMS, J., concurring.

INDICTMENTS found and returned in the Superior Court Department on October 12, 1988.

The cases were heard by *Cortland Mathers*, J., and were reported by him to the Appeals Court. The Supreme Judicial Court transferred the case on its own initiative.

[1]The indictments name the defendant Maria Pinhancos. A judge in the Superior Court allowed a motion to amend the indictment by naming the defendant Maria Raposo.

*Benjamin H. Keehn*, Committee for Public Counsel Services, for the defendant.

*Cynthia A. Vincent*, Assistant District Attorney, for the Commonwealth.

O'CONNOR, J. After a jury-waived trial, a judge in the Superior Court found the defendant guilty of being an accessory before the fact to rape and to indecent assault and battery on a mentally retarded person. After sentencing the defendant to concurrent terms of probation, the judge stayed execution of the sentences and reported the case to the Appeals Court pursuant to Mass. R. Crim. P. 34, 378 Mass. 905 (1979). We transferred the case to this court on our own initiative, and now reverse the convictions and order judgments for the defendant.

Rule 34 states, in relevant part: "If . . . with the consent of the defendant, after conviction of the defendant, a question of law arises which the trial judge determines is so important or doubtful as to require the decision of the Appeals Court, the judge may report the case so far as necessary to present the question of law arising therein." Although the record does not disclose that the defendant expressly consented to the report, we infer the defendant's implied consent from the absence of any objection in the trial court or here.

In his report, the judge set forth his findings and a series of questions of law. The significant findings were as follows. The defendant is the mother of a mildly retarded daughter, who was seventeen years old at the time of the incidents described below. The defendant's boy friend, Manuel F. Matos, Jr., lived with the defendant and her daughter for about two months before May 22, 1988. Matos told the defendant that he intended to have sexual intercourse with her daughter. In response, the defendant expressed neither encouragement nor discouragement. On one occasion, Matos told the defendant that he was going to have intercourse with her daughter, stating that "she needs a man." The defendant did not respond, although she knew that her daughter did not want to have intercourse with Matos. Matos had intercourse with the daughter from two to four times by force and against her

will. At least once, after Matos had entered the daughter's bedroom, the defendant pounded on the closed, unlocked door and told Matos to stop. On May 22, 1988, the defendant took her daughter to a New Bedford police station, where they gave statements about the sexual activity between Matos and the daughter. Prior to this visit at the police station, the defendant made no effort to enlist outside assistance to prevent Matos from engaging in sexual intercourse with her daughter.

The judge's questions, set forth in his report, are as follows.

"1. Does a parent have any duty to take action to prevent harm to his/her child?

"2. If such a duty exists, does it include a requirement to take reasonable steps to prevent a sexual assault in the family home on a [seventeen] year old, mildly mentally retarded daughter?

"3. If the duty exists, is the failure to fulfill it a crime?

"4. If it is a crime, is it a violation of [G. L. c. 274, § 2]?"

We need not answer the four questions separately. It is clear that the basic question that prompted the report is whether a person may be found guilty of being an accessory before the fact (G. L. c. 274, § 2 [1990 ed.]) to rape (G. L. c. 265, § 2 [1990 ed.]) and to indecent assault and battery on a mentally retarded person (G. L. c. 265, § 13F [1990 ed.]), where the victim is a minor, the defendant is the minor's parent, and the defendant failed to take reasonable steps to prevent the sexual attacks by a third person. Stated another way, the question as to each conviction is whether the subsidiary facts found by the judge, on which he clearly based his ultimate guilty findings, support such conclusions.

General Laws c. 274, § 2, provides: "Whoever aids in the commission of a felony, or is accessory thereto before the fact by counselling, hiring or otherwise procuring such felony to be committed, shall be punished in the manner provided for the punishment of the principal felon." The following principles emerge from an examination of our case law in this area. In order to be found guilty as an accessory before

the fact, the evidence must prove beyond a reasonable doubt that the defendant must "in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, [and] that he seek by his action to make it succeed." *Commonwealth* v. *Stout*, 356 Mass. 237, 241 (1969), quoting *United States* v. *Peoni*, 100 F.2d 401, 402 (2d Cir. 1938). We have held that the plain language of the statute, involving aiding, counselling, hiring or otherwise procuring a principal to commit the crime, requires "something more than mere acquiescence," although not necessarily physical participation, "if there is association with the criminal venture and any significant participation in it." *Commonwealth* v. *Morrow*, 363 Mass. 601, 609 (1973), citing *Commonwealth* v. *French*, 357 Mass. 356, 391 (1970), judgments vacated as to death penalty sub nom. *Limone* v. *Massachusetts*, 408 U.S. 936 (1972). Moreover, "presence at the scene of the [crime], together with the failure to take affirmative steps to prevent it, does not render a person liable as principal." *Commonwealth* v. *Murphy*, 1 Mass. App. Ct. 71, 76 (1973). A person cannot be found guilty as an accessory before the fact simply because she knows a crime is going to be committed, even when this knowledge is coupled with her subsequent concealment of the completed crime. *Commonwealth* v. *Perry*, 357 Mass. 149, 151 (1970). *Commonwealth* v. *Murphy*, *supra* at 77. Therefore, it is clear that what is required to be convicted as an accessory before the fact is not only knowledge of the crime and a shared intent to bring it about, but also some sort of act that contributes to its happening.

The Commonwealth argues that the case was tried, and the defendant convicted, on the theory that, as the mother of the victim, the defendant had a common law duty to protect her child from harm, and that her failure to take reasonable steps to fulfil this duty is an omission sufficient to make her liable as an accessory. Putting the Commonwealth's contention another way, it is that, in allowing Matos access to her daughter and failing to take reasonable steps to stop his wrongful actions, the defendant "aided" Matos in commit-

ting the crimes and thus became a participant in the criminal activity. The defendant's intent that the underlying crimes be committed, the Commonwealth contends, can be inferred from her knowledge of the crimes and her intentional acts of omission.

Only one case cited by the Commonwealth in support of this theory involves a statute similar to c. 274, § 2.[2] In *State v. Walden*, 306 N.C. 466 (1982), the Supreme Court of North Carolina upheld a mother's conviction of aiding and abetting an assault with a deadly weapon by another person on her child. In general, North Carolina law on aiding and abetting, like our law on accessory before the fact, requires that a person must say or do something that demonstrates consent to the felonious purpose and contributes to the execution of a crime. *Id.* at 476. In *Walden*, the evidence showed that the mother witnessed, but made no attempt to stop, another person's lengthy beating of her small child with a belt, which resulted in serious injuries to the child. *Id.* at 469-470. The *Walden* court created an exception to the general aiding and abetting rule when a parent, who is present, neglects his or her affirmative legal duty to "take all steps reasonably possible to protect the parent's child from an attack by another person" and that such an omission shows the parent's "consent and contribution to the crime being committed." *Id.* at 476. See *State v. Oliver*, 85 N.C. App. 1, 24 (1987) (evidence sufficient to sustain mother's conviction as aider and abettor to second-degree sexual offense against her child, where mother present in bed while child raped, touched the child during rape, and failed to take any steps to

---

[2]The Commonwealth's reliance on another out-of-State case is misplaced because it involves a child abuse statute which is not analogous to G. L. c. 274, § 2. In *State v. Williquette*, 129 Wis. 2d 239 (1986), the Supreme Court of Wisconsin held that a parent who left her children in the care of a husband who she knew physically and sexually abused them could be prosecuted as a direct principal under the State child abuse statute, as one who "subjects a child to cruel maltreatment" as specified in Wis. Stat. § 940.201 (since repealed). Because the court held that the mother could be tried as a direct principal, the majority opinion did not consider the issue whether she was an aider and abettor. *Id.* at 243 n.2.

avert assault). The Commonwealth urges this court to follow the Supreme Court of North Carolina in holding that a parent's failure to take reasonable steps to perform his or her affirmative duty to protect his or her child is a form of consent and participation in the commission of a criminal act against the child.

The Commonwealth bolsters its contention that the defendant's conduct was criminal by analogizing this situation to cases in which this court held that a parent's failure to protect his or her child, knowing there was a high degree of likelihood that the child would be substantially harmed, constituted wanton or reckless conduct sufficient to support a manslaughter conviction. In *Commonwealth v. Gallison*, 383 Mass. 659, 665-666 (1981), this court upheld the manslaughter conviction of a mother where the evidence was sufficient for the jury to believe that she made no effort to obtain medical help for her child who had an extreme fever and became unconscious. This court stated, "[a]s a parent . . . the defendant had a duty to provide for the care and welfare of her child," and found that the jury could have concluded that her inaction in light of the child's obvious illness was a type of intentional conduct which "involves a high degree of likelihood that substantial harm will result" and thus constituted "wanton or reckless" conduct for the purposes of manslaughter. *Id.* at 665, quoting *Commonwealth v. Welansky*, 316 Mass. 383, 399 (1944). See *Commonwealth v. Michaud*, 389 Mass. 491, 499 (involuntary manslaughter convictions of parents reversed where evidence was insufficient to prove that parents' failure to seek medical attention for ailing child was reckless rather than negligent).

Other jurisdictions, referred to by the Commonwealth, have reached similar results. See *State v. Zobel*, 81 S.D. 260, 273, 281 (1965) (father's conviction of second-degree manslaughter upheld where the evidence proved that he knowingly exposed his children to cruel and inhuman beatings by his wife, resulting in their deaths); *State v. Austin*, 84 S.D. 405, 414-415 (1969) (first-degree manslaughter conviction of mother upheld where evidence proved she aided

and abetted cruel punishment of child by her companion, resulting in child's death); *Palmer* v. *State*, 223 Md. 341, 352 (1960) (involuntary manslaughter conviction of mother upheld where evidence proved she displayed a "wanton or reckless disregard for human life" in failing to remove her child from boy friend who beat the child so severely that it would "put any reasonable person on guard that the child's life was in real and imminent peril").

While it is clear in this and other jurisdictions that a parent's failure to fulfil his or her duty to provide for the safety and welfare of a child may rise to the level of wanton or reckless conduct sufficient to support a manslaughter conviction, we decline to follow the Supreme Court of North Carolina and read into our accessory before the fact law the principle that a mere omission by a parent to take action to protect a child, without more, is the equivalent of intentionally aiding in the commission of a felony against that child. By its very terms, c. 274, § 2, requires more than an omission to act. As our case law makes clear, in order to be punished as an accessory before the fact, the defendant must have actually aided in the commission of the felony or counselled, hired, or otherwise procured someone to commit it. See G. L. c. 274, § 2; *Commonwealth* v. *Murphy*, *supra* at 77.

*Commonwealth* v. *Hall*, 322 Mass. 523 (1948), relied on by the Commonwealth, does not require a different result. In *Hall*, this court affirmed the conviction of murder in the second degree of a mother who, the jury could have found, intentionally placed her baby in the attic of her home and withheld food and liquids from it as a result of which the baby died. *Id.* at 527-528. The defendant in *Hall* was not charged as an accessory, as here, and unlike the present case, malicious conduct was involved. For conviction as an accessory before the fact, nothing less than shared intent and significant participation in the underlying crime, neither of which was present here, will suffice.

On the facts reported by the Superior Court judge, the Commonwealth has failed to show beyond a reasonable doubt that the defendant aided, counselled, hired, or pro-

cured Matos to commit rape and indecent assault and battery, or that she took any other action which would constitute participation in the commission of these crimes against her daughter. The fact that she knew ahead of time of Matos's intent to commit the criminal acts, and did not report the subsequent crimes to the police immediately, does not make her guilty as an accessory before the fact. *Commonwealth* v. *Perry*, *supra* at 151.

We conclude that the convictions must be reversed and that judgments of acquittal are required.

*So ordered.*

ABRAMS, J. (concurring). I concur. On the facts of this case, the defendant cannot be convicted as an accessory before the fact pursuant to G. L. c. 274, § 2 (1990 ed.). "[O]rdinary rules of statutory construction require us to construe any criminal statute strictly against the Commonwealth." *Aldoupolis* v. *Commonwealth*, 386 Mass. 260, 267, cert. denied, 459 U.S. 864 (1982), quoting *Commonwealth* v. *Devlin*, 366 Mass. 132, 137-138 (1974). "Plain omissions in the law to provide for exigencies which may arise cannot be supplied by *those charged with administering the law or by the courts in construing and interpreting the statutes*" (emphasis supplied). *Thacher* v. *Secretary of the Commonwealth*, 250 Mass. 188, 190-191 (1924). Cf. *State* v. *Williquette*, 129 Wis. 2d 239, 268 (1986) (Heffernan, C.J., dissenting) ("the majority's strained interpretation [of the child abuse statute, holding it criminalizes acts of omission] is an invasion of the legislative prerogative"). Currently, no criminal statute reaches acts of omission such as the one involved in this case.

I note that a majority of State Legislatures have enacted criminal child abuse statutes which proscribe acts of omis-

sion as well as the affirmative infliction of harm to a child.[1]

[1]See, e.g., *Phelps* v. *State*, 439 So. 2d 727, 734 (Ala. Crim. App. 1983) (child abuse statute, Ala. Code § 26-15-3, encompasses acts of omission as well as of commission); Cal. Penal Code § 273a (West 1988) (criminal liability imposed on "(1) [a]ny person who, under circumstances or conditions likely to produce great bodily harm or death, . . . permits any child to suffer . . . or having the care or custody of any child . . . permits the person or health of such child to be injured, or . . . permits such child to be placed in such situation that its person or health is endangered . . . [and] (2) [a]ny person who, under circumstances or conditions other than those likely to produce great bodily harm or death . . . permits any child to suffer . . . or having the care or custody of any child . . . permits the person or health of such child to be injured, or . . . permits such child to be placed in such situation that its person or health may be endangered . . ."); Colo. Rev. Stat. Ann. § 18-6-401(1) (West 1990 & Supp. 1991) ("[a] person commits child abuse if [he] . . . permits a child to be unreasonably placed in a situation which poses a threat of injury to the child's life or health . . ."); Fla. Stat. Ann. § 827.04(1) (West 1991) ("[w]hoever . . . knowingly or by culpable negligence . . . permits the infliction of physical or mental injury to the child, and in so doing causes great bodily harm, permanent disability, or permanent disfigurement to such child, shall be guilty of" child abuse); Iowa Code Ann. § 726.6.1e (West 1979 & Supp. 1992) (parent, guardian or legal custodian who "[k]nowingly permits the continuing physical or sexual abuse of a child or minor" is guilty of child endangerment); *State* v. *Green*, 449 So. 2d 141, 144 (La. Ct. App. 1984) ("criminal negligence" as used in La. Rev. Stat. § 14:93 prohibiting cruelty to a juvenile is such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful person in the circumstances); Minn. Stat. Ann. § 609.378 (2) (1990) ("[a] parent, legal guardian, or caretaker who knowingly permits the continuing physical or sexual abuse of a child is guilty of neglect of a child"); Mo. Ann. Stat. § 568.050 (3) (1986 & Supp. 1991) (criminalizing parent, guardian, or legal custodian who "recklessly fails or refuses to exercise reasonable diligence" in preventing nonaccidental injury to child); Nev. Rev. Stat. § 200.508 (1992) ("1. Any person who . . . (b) Is responsible for the safety or welfare of a child and who permits or allows that child to suffer unjustifiable physical pain or mental suffering as a result of abuse or neglect or to be placed in a situation where the child may suffer physical pain or mental suffering as the result of abuse or neglect, is guilty of a gross misdemeanor . . . 3. As used in this section: . . . (c) 'Permit' means permission that a reasonable person would not grant and which amounts to a neglect of responsibility attending the care, custody and control of a minor child"); N.M. Stat. Ann. § 30-6-1(C) (Michie 1978 & Supp. 1991) ("[a]buse of a child consists of a person knowingly, intentionally or negligently, and without justifiable cause . . . permitting a child to be (1) placed in a situation that may endanger the child's life or health; (2) tortured, cruelly confined or cruelly punished . . ."); W. Va. Code § 61-8D-1 (Michie 1989) ("[n]eglect" for

Some State statutes expressly identify the crime as the viola-
tion of a duty of care or protection.[2] However, as the Su-
preme Court of North Carolina emphasized in *State* v.
*Walden,* 306 N.C. 466 (1982), a requirement that parents
take affirmative action to prevent harm to their children does
not mean that "parents have the legal duty to place them-
selves in danger of death or great bodily harm in coming to
the aid of their children."[3]

Strong and compelling arguments can be made for and
against criminalizing the type of conduct described in the
court's opinion. See Johnson, Criminal Liability for Parents

---

purposes of child abuse statute means "unreasonable failure by a parent,
guardian, or any person voluntarily accepting a supervisory role towards a
minor child to exercise a minimum degree of care to assure said minor
child's physical safety or health").

[2]See, e.g., Haw. Rev. Stat. § 709-904 (2) (1991) ("[a] person commits
the offense of endangering the welfare of a minor . . . by violating or inter-
fering with any legal duty of care or protection owed such minor"); Me.
Rev. Stat. Ann. tit. 17-A, § 554 (West 1983 & Supp. 1990) (the crime of
endangering the welfare of a child includes knowingly endangering "the
child's health, safety or mental welfare by violating a duty of care or pro-
tection"); Miss. Code Ann. § 97-5-39 (1973 & Supp. 1991) ("[a]ny par-
ent, guardian or other person who . . . omits the performance of any duty,
which . . . omission results in the abuse and/or battering of any child"
may be found guilty of child abuse); Mont. Code Ann. § 45-5-622 (1990)
("[a] parent, guardian, or other person supervising the welfare of a child
less than 18 years old commits the offense of endangering the welfare of
children if he knowingly endangers the child's welfare by violating a duty
of care, protection or support"); N.H. Rev. Stat. Ann. § 639:3 (1986) (the
crime of endangering the welfare of a child includes "purposely violating a
duty of care, protection or support . . . owe[d] to such child"); Ohio Rev.
Code Ann. § 2919.22 (Baldwin 1986 & Supp. 1991) (endangering chil-
dren includes "violating a duty of care, protection or support"); Wyo. Stat.
§ 6-4-403 (Michie 1987 & Supp. 1991) (a person commits the crime of
endangering children "by violating a duty of care, protection or support").

[3]See Iowa Code Ann. § 726.6.1e (1979 & Supp. 1992) ("it is an affirm-
ative defense . . . if the person had a reasonable apprehension that any
action to stop the continuing abuse would result in substantial bodily harm
to the person or the child or minor"); Minn. Stat. Ann. § 609.378 (West
1990) ("It is a defense to a prosecution . . . that at the time of the neglect
or endangerment there was a reasonable apprehension in the mind of the
defendant that acting to stop or prevent the neglect or endangerment
would result in substantial bodily harm to the defendant or child in
retaliation").

Who Fail to Protect, 5 Law & Ineq. J. 359, 377-390 (1987); Note, Commendable or Condemnable? Criminal Liability for Parents Who Fail to Protect Their Children from Abuse, 1987 Wis. L. Rev. 659, 684-685. As the court's opinion makes clear, parents have a duty to provide for the safety and welfare of their children. *Ante* at 187-188. See *Commonwealth* v. *Gallison*, 383 Mass. 659, 665 (1981), and cases cited. It is for the Legislature to determine whether expanding that duty by criminalizing acts of omission would better protect the Commonwealth's children.