Neel, J.
On February 3, 1992, John E. Volungis, Jr. was murdered by an unknown assailant. No one has been charged in the crime. Following the murder, Volungis’s wife, defendant Bridget D’lorio-Volungis (“D’lorio-Volungis”), filed a claim as sole beneficiary of a $150,000 insurance policy issued on the life of John Volungis in January 1992 by plaintiff Continental Assurance Co. D’lorio-Volungis’s claim is contested by defendant Linda Marie Volungis (“Volungis”), mother of John Volungis and administrator of his estate.
Plaintiff brought this interpleader action to resolve defendants’ competing claims to the insurance proceeds, which plaintiff has deposited with the clerk. Volungis brought a cross-claim against D’lorio-Volungis, claiming that she is a suspect in her husband’s murder, and therefore should be barred from receiving the proceeds of his life insurance policy. Volungis seeks payment of the proceeds to the estate.
Both defendants initially demanded a jury trial. On the day trial commenced, Volungis pressed her demand for a jury; D’lorio-Volungis did not. The Court ruled that Volungis’s claim was essentially an equitable one for declaratory relief, based on the theory that D’lorio-Volungis was an accessory before the fact of her husband’s murder. Under the authority of G.L.c. 231A, §1, and c. 214, §13, and Mass.R.Civ.P. 39, the Court further ruled that it would frame issues of fact to be tried by a jury. The single question on the special jury verdict was: “Has plaintiff, Linda Marie Volungis, proved by a preponderance of the evidence that defen *487 dant Bridget D’lorio Volungis[1] was an accessory before the fact of the murder of John E. Volungis, Jr.?” The jury’s answer to the question was “yes.”
D’lorio-Volungis moves for judgment notwithstanding the verdict. Volungis moves for entry of judgment on the special jury verdict. After hearing, and consideration of the parties’ submissions, D’lorio-Volungis’s motion is allowed, and Volungis’s motion is denied.
DISCUSSION
In considering a motion for judgment notwithstanding the verdict, “the judge’s task, ‘taking into account all the evidence in its aspect most favorable to the plaintiff, [is] to determine whether, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, the jury reasonably could return a verdict for the plaintiff.’ ” Carribridgeport Savings Bank v. Boersner, 413 Mass. 432, 438 (1992) (quoting Tosti v. Ayik, 394 Mass 482, 494 (1985)). The Court will consider whether “ ‘anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn’ in favor of the nonmoving party.” Id. Inferences to be drawn from the evidence “must be based on probabilities rather than possibilities and cannot be tire result of mere speculation and conjecture.” Id.
As a preliminary matter, Volungis argues that D’lorio-Volungis’s motion should be denied because she failed to renew her motion for directed verdict at the close of Volungis’s case in chief, and again at the close of the evidence. Volungis relies upon an excerpt of the trial .transcript wherein, at sidebar, the Court denies the motion for directed verdict, and then in open court both parties rest. The Court rejects Volungis’s argument for the reason that, because D’lorio-Volungis was to rest immediately after Volungis (the “plaintiff) rested, the Court deemed the motion for directed verdict to be made after each party rested, and for convenience (and because of the presence of the press) dealt with the motion at sidebar just prior to those events.
On its merits, Volungis’s claim rests upon the doctrine that a beneficiary who murders an insured may not receive the insurance proceeds. Slocum v. Metropolitan Life Ins. Co., 245 Mass. 565 (1923). The parties dispute whether the doctrine applies in a case where, as here, there has been no criminal conviction. For present purposes, the Court will assume that it does. The motion for judgment notwithstanding the verdict turns, therefore, on whether there was any evidence at trial which could provide a basis for the jury’s finding, by a preponderance of the evidence, that D’lorio-Volungis was an accessory before the fact of her husband’s murder.
As the Court instructed the jury, G.L.c. 274, §2 provides: “Whoever aids in the commission of a felony, or is accessory thereto before the fact by counselling, hiring or otherwise procuring such felony to be committed, shall be punished in the manner provided for the punishment of the principal felon.”
The Supreme Judicial Court analyzed the crime of accessory before the fact in Commonwealth v. Raposo, 413 Mass. 182 (1992). In that case the defendant was charged with failing to protect her minor, retarded daughter from the sexual assaults of the defendant’s boyfriend. There was evidence that the defendant knew of the assaults, but took no steps to prevent them; such evidence, the court held, did not support a conviction of the crime of accessory before the fact of rape. The court summarized the law of accessory as follows:
In order to be found guilty as an accessory before the fact, the evidence must prove . . . that the defendant must “in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, [and] that he seek by his action to make it succeed.” . . . We have held that the plain language of the statute, involving aiding, counselling, hiring or otherwise procuring a principal to commit the crime, requires “something more than mere acquiescence,” although not necessarily physical participation, “if there is association with the criminal venture and any significant participation in it.” . . . Moreover, “presence at the scene of the [crime], together with the failure to take affirmative steps to prevent it, does not render a person liable as principal.”... A person cannot be found guilty as an accessory before the fact simply because she knows a crime is going to be committed, even when this knowledge is coupled with her subsequent concealment of the completed crime . .. Therefore, it is clear that what is required to be convicted as an accessory before the fact is not only knowledge of the crime and a shared intent to bring it about, but also some sort of act that contributes to its happening.
Id. at 184-85 (citations omitted). In Raposo, the Commonwealth argued that the defendant’s intent that the underlying crimes be committed could be “inferred from her knowledge of the crimes and her intentional acts of omission.” The Court rejected that argument, observing that “our law . . . requires that a person must say or do something that demonstrates consent to the felonious purpose and contributes to the execution of a crime.” Id. at 186.
In Commonwealth v. Green, 420 Mass. 771, 781 (1995), the court reversed the murder conviction of a defendant on the ground, inter alia, that the evidence was insufficient to support a jury instruction on a theory of accessory before the fact. Eyewitness testimony about the shooting itself identified the defendant only as the shooter, not as one who assisted in the crime. Nor did other evidence support an accessory instruction:
*488 [T]he Commonwealth offered no evidence from which a rational jury could conclude that the defendant was an accessoiy before the fact. Hood’s [the victim’s girlfriend] testimony established that the defendant had a motive to kill the victim. She further established that he had threatened the victim. The Commonwealth, however, introduced no evidence tending to prove that the defendant aided, counseled, hired, or procured an unknown principal beforehand to commit the shootings. G.L.c. 274, §3. To infer from the existence of a motive and a single threat that the defendant hired or procured someone else to shoot the victim requires impermissible speculation and conjecture.
(Citations omitted.)
After a careful review of the evidence adduced at trial, the Court concludes that there was no basis in the evidence upon which the jury could have found that D’lorio-Volungis even knew that a crime was going to be committed, let alone hired or procured someone to commit murder. To be sure, there was ample evidence from which the jurors could have concluded that D’lorio-Volungis had a motive to have her husband killed, and took actions that contributed, even if unknowingly and unintentionally, to the killing. For example, there was evidence that D’lorio-Volungis’s relationship with John was at times a difficult one; that she caused him to obtain an insurance policy naming her as the sole beneficiary; that, shortly before the murder, she telephoned the insurance agent to be sure that the policy was in effect; and that, on the day of the murder, she was careful to ensure that she was the person who delivered John to their home from his mother’s house.
Such evidence does not permit the jury to infer, other than by speculation, that D’lorio-Volungis had any knowledge, beforehand or at the time of the crime, that her husband would be murdered.[2] Volungis elicited no evidence of any communication, direct or indirect, between D’Iorio-Volungis and the assailant (who remains unidentified), nor was there any evidence that she associated herself with the assailant’s actions in some conscious manner, or was even aware that there would be an assailant. The mere facts that she had a motive, and that her actions preceded those of the murderer so as to facilitate the murderer’s crime, do not constitute evidence from which the jury may find, other than by impermissible speculation, that she hired or procured someone else to kill her husband. Cf. Commonwealth v. Green, supra at 781. Even if such evidence arguably supports such an inference, it is at least equally consistent with an innocent state of mind. “When the evidence tends equally to sustain either of two inconsistent propositions, neither of them can be said to have been established by legitimate proof.” Commonwealth v. Salemme, 395 Mass. 594, 601 (1985), quoting Commonwealth v. Fancy, 349 Mass. 196 (1965).
In Commonwealth v. Raposo, the court held that it was not enough for a defendant to be shown to have had knowledge of the crime and intent that it be committed, but to have taken no action to make it succeed; all three were necessary. Commonwealth v. Raposo, supra at 185. In this case, while there was evidence of affirmative actions by D’Iorio-Volungis, there was no competent evidence of knowledge and intent — no evidence, that is, to satisfy the requirement that “a person must say or do something that demonstrates consent to the felonious purpose and contributes to the execution of a crime.” Commonwealth v. Raposo, supra at 186. Without evidence of the necessary “knowledge of the crime and a shared intent to bring it about,” id. at 185, the claim that she was an accessory before the fact of her husband’s murder must fail.
Because the Court concludes that Volungis failed to present evidence from which the jury could properly find D’lorio-Volungis to be an accessory before the fact of the murder of John Volungis, it is unnecessary to decide whether, were the jury verdict to stand, that finding would be sufficient under Slocum v. Metropolitan Life Ins. Co., supra, to bar D’lorio-Volungis from receiving the proceeds of the insurance policy on his life.
ORDER
For the reasons stated above, defendant Bridget D’lorio-Volungis’s motion for judgment notwithstanding the verdict is ALLOWED, and defendant Linda Marie Volungis’s motion for judgment is DENIED. Judgment shall enter in favor of Bridget D’lorio Volungis ordering, declaring and adjudging that her rights as beneficiary under the policy of insurance issued by plaintiff Continental Assurance Co. on the life of John E. Volungis, Jr. are not diminished, voided, or otherwise rendered invalid by Linda Marie Volungis’s claim that Bridget D’Iorio-Volungis was an accessory before the fact of his murder. The insurance proceeds on deposit with the clerk shall be paid to Bridget D’lorio-Volungis following the expiration of the period for appealing the judgment, if no appeal is taken, or, if an appeal is taken, following a final determination thereof.

 The parties were so characterized, without objection, to simplify matters for the jury.

 The Court permitted Volungis and John Volungis’s sister, April Volungis, to testify to statements John Volungis allegedly made a month before he died, Le., that D’lorio-Volungis would allow him to end their separation and resume living with her only on condition that he obtain the insurance policy; that he feared that if he did so, she would “put out a contract" on him; and that, if anything happened to him, they should tell police that D’lorio-Volungis had had him killed. This evidence — assuming that it was properly before the jury and that it was believed — provided the jury with no facts, only unsupported opinion, from which to conclude that D’lorio-Volungis procured the murder. See Commonwealth v. Green, supra at 781 (evidence of motive and prior threat insufficient basis for inference that defendant hired or procured someone else to shoot victim).