COMMONWEALTH *vs.* MELISSA GARCIA
(and a companion case[1]).

No. 98-P-248.

Essex. April 6, 1999. - July 27, 1999.

Present: ARMSTRONG, DREBEN, & GILLERMAN, JJ.

*Child Abuse. Parent and Child,* Duty to prevent harm. *Practice, Criminal,* Required finding, Instructions to jury.

At the trial of indictments alleging the defendants wantonly or recklessly permitted another to commit an assault and battery upon their thirty-three day old child causing bodily injury, sufficient circumstantial evidence was introduced by the Commonwealth to warrant the jury's verdicts of guilty [422-423]; where it was not necessary for the Commonwealth to prove who in particular had assaulted the infant, there was no inconsistency in the judge's instructing the jury that the "another" could have been one of the defendants, after the defendants had been acquitted of assault and battery [423-424].

INDICTMENTS found and returned in the Superior Court Department on October 23, 1996, and October 24, 1996, respectively.

The cases were tried before *Joseph A. Grasso, Jr.,* J.

*Aileen F. Cox* for Manuel Rodriguez.

*Audrey S. Gordon* for Melissa Garcia.

*Robert J. Bender,* Assistant District Attorney, for the Commonwealth.

DREBEN, J. *Commonwealth* v. *Raposo,* 413 Mass. 182 (1992), held that a parent who failed to take reasonable steps to prevent sexual attacks on her minor daughter by a third person could not be found guilty of being an accessory before the fact. More than an omission to act was required. In a concurrence, Justice Abrams, noting that "a majority of State Legislatures have enacted criminal child abuse statutes which proscribe acts of omission as well as the affirmative infliction of harm," *id.* at

---

[1]Commonwealth *vs.* Manuel Rodriguez.

189-190, and noting also that "compelling arguments can be made for and against criminalizing" acts of omission, stated: "It is for the Legislature to determine whether expanding that duty by criminalizing acts of omission would better protect the Commonwealth's children." *Id.* at 191-192. In response, the Legislature enacted G. L. c. 265, § 13J, set forth in relevant part in the margin,[2] under which both defendants, "having care and custody" of their infant daughter, were convicted of "wantonly or recklessly permit[ting] another to commit an assault and battery upon such child, which assault and battery cause[d] bodily injury."[3] The defendants' motions for a required finding of not guilty were allowed on the indictments charging

[2]As inserted by St. 1993, c. 340, § 2, G. L. c. 265, § 13J, in relevant part provides:

"(*a*) For the purposes of this section, the following words shall, unless the context indicates otherwise, have the following meanings: —

" 'Bodily injury', substantial impairment of the physical condition including any burn, fracture of any bone, subdural hematoma, injury to any internal organ, any injury which occurs as the result of repeated harm to any bodily function or organ including human skin or any physical condition which substantially imperils a child's health or welfare.

" 'Child', any person under fourteen years of age.

" 'Person having care and custody', a parent, guardian, employee of a home or institution or any other person with equivalent supervision or care of a child, whether the supervision is temporary or permanent. . . .

"(*b*) Whoever commits an assault and battery upon a child and by such assault and battery causes bodily injury shall be punished by imprisonment in the state prison for not more than five years or imprisonment in the house of correction for not more than two and one-half years.

"Whoever commits an assault and battery upon a child and by such assault and battery causes substantial bodily injury shall be punished by imprisonment in the state prison for not more than fifteen years or imprisonment in the house of correction for not more than two and one-half years.

"Whoever, having care and custody of a child, wantonly or recklessly permits bodily injury to such child or wantonly or recklessly permits another to commit an assault and battery upon such child, which assault and battery causes bodily injury, shall be punished by imprisonment for not more than two and one-half years in the house of correction."

"Whoever, having care and custody of a child, wantonly or recklessly permits substantial bodily injury to such child or wantonly or recklessly permits another to commit an assault and battery upon such child, which assault and battery causes substantial bodily injury, shall be punished by imprisonment in the state prison for not more than five years, or by imprisonment in a jail or house of correction for not more than two and one-half years."

[3]The defendants' indictments charged them under the portion of G. L.

them, respectively, with committing an assault and battery upon a child under the age of fourteen years.

They appeal from their convictions claiming (1) there was insufficient evidence for a jury to find that either defendant wantonly or recklessly permitted another person to commit an assault and battery upon their daughter, and their motions for required findings of not guilty should have been allowed; and (2) the judge erred in instructing the jury, over the defendants' objections, that they could find that a codefendant could be the person other than the defendant who committed the assault and battery. This second alleged error, they contend, resulted in inconsistent verdicts, and the judge should have allowed their requested modification of the verdict slip to require the jury to name the "other." We affirm the convictions.

1. Viewing the evidence in the light most favorable to the Commonwealth, see *Commonwealth* v. *Latimore,* 378 Mass. 671, 676-677 (1979), the jury were warranted in finding the following. On February 14, 1995, Garcia brought her thirty-three day old daughter to the pediatric health center of the Holy Family Hospital in Methuen for a scheduled "well-baby" visit. Garcia was concerned with the baby's eyes which were very red. The nurse practitioner who examined the child noticed bruises on the forehead, left arm, and knee. A subsequent examination by a physician revealed multiple bruises on the head, on the extremities, and some on the trunk.

The eye condition was diagnosed as "subconjunctival hemorrhages," and a CAT scan and X-rays were ordered. These tests, as later testified to by the Commonwealth's expert, Dr. Paul Kleinman, revealed thirty-one fractures — twenty-six rib fractures, a skull fracture, fractures of both clavicles (collar bones), and two fractures of the left leg. The rib fractures indicated, according to Dr. Kleinman, that the child had been subjected to a massive amount of traumatic force to the chest — the child was either squeezed or slammed down onto a surface. Rib fractures are extremely rare because a baby's rib cage is quite pliable. The leg fractures were also very unusual and only would have occurred if the lower extremity had been grabbed, twisted, or yanked, or if the infant had been swung by holding the lower extremity. Dr. Kleinman was able to determine

c. 265, § 13J, making it an offense to permit "*substantial* bodily injury." They were convicted of the lesser included offense of permitting an assault and battery causing "bodily injury."

the approximate ages of some of the fractures from the formation of new bones. The rib fractures were under ten days, and the fractures near the spine were approximately two weeks old. The skull fracture was probably more recent. Based on these dates, he identified at least two and probably three different times during which the injuries occurred.

Based on the "multiplicity of the fractures in an infant of this age who has not sustained a massive injury such as a fall from a building or a high-speed motor vehicle accident," Dr. Kleinman testified that the "findings here indicate to me that these are inflicted injuries."[4]

When asked by the nurse and the doctor, the mother had no explanation for the child's injuries but suggested that burping or kissing might have caused the bruise on the head, and that she may have rolled over the baby in her sleep. She denied having shaken the baby or having allowed her to fall. Dr. Kleinman was of the opinion that none of the explanations offered by the mother explained the injuries. When questioned by a detective, both Garcia and Rodriguez, the father, replied that they did not know how the fractures had occurred. The father and mother had primary care of the child, although the father was away at school during the day. They once had used a babysitter, and a cousin lived with the mother and father and the baby.[5]

Although there was no direct evidence that the parents knew of the child's injuries, there was sufficient circumstantial evidence. The thirty-three day old baby had bruises; the mother had noticed pain. None of the mother's explanations was plausible. There was evidence of inflicted injuries on at least two and probably more occasions, and, even if the parents did not recognize the grave danger, an ordinary person in the same circumstances would have realized the gravity of the danger. "[Persons] may be reckless within the meaning of the law although [they themselves thought they were] careful." See *Commonwealth* v. *Welansky*, 316 Mass. 383, 398-399 (1944).

---

[4]During the defendants' case, Dr. Eric Arvidson, their expert, was also of the opinion that some of the fractures were nonaccidental, that is, they were inflicted injuries. The Commonwealth's case did not deteriorate during the defendants' case for purpose of a required finding of not guilty.

[5]During the defendants' case, it appeared that many people were in contact with the infant prior to February 14. The parents had taken the child to visit family members, but remained present at such visits.

This being so, their omissions (if not their actions) amounted to wanton or reckless conduct.[6]

It was not necessary for the Commonwealth to prove which person in particular assaulted the infant. Cf. *Commonwealth* v. *Roman*, 43 Mass. App. Ct. 733, 736 (1997), *S.C.*, 427 Mass. 1006, 1008 (1998) (where Commonwealth proved that the defendant had intentionally exposed the child to some unknown scalding agent, it was unnecessary to prove what scalding agent in particular the defendant employed). "The case . . . stands in the not particularly unfamiliar posture of a child left in the custody of [two] identified adult[s], who suffers injuries of a type that are inconsistent with the explanation given by the custodian[s] and not attributable in the circumstances to ordinary accidental causes." 43 Mass. App. Ct. at 735. 427 Mass. at 1008.

The Commonwealth satisfied its burden by showing that the injuries inflicted on more than one occasion were such that an ordinary person having the care and custody of the child would have recognized the child was being exposed to inflicted bodily injuries. Each parent here had the care and custody of the child and did in fact care for the child. We conclude that under the statute each may be convicted.

2. The defendants also contend that it was error for the judge, having allowed the defendants' motions for required findings of not guilty on the assault and battery charges, to instruct the jury as follows:

> "you should understand that 'another' [as used in the statute] refers to any other natural person, not just to a codefendant. It could be a codefendant but it need not be."

The defendants claim this instruction was inconsistent with the judge's allowance of their motions for required findings of not guilty on the indictments charging them with assault and battery. There was no inconsistency. The evidence was such that it was not clear who had committed the batteries upon the infant. It could have been either parent, the babysitter, or the cousin who lived with them. For this reason, the judge properly entered required findings of not guilty.

---

[6]The defendants' reliance on the fact that on February 6, 1995, Dr. William O'Reilly did not notice any injuries was consistent with the testimony that most of the fractures could have been inflicted later.

Under c. 265, § 13J, it does not matter who committed the batteries, and each person having the care and custody of the child may be found guilty of the offense of permitting anyone to commit an assault and battery. Moreover, since there were here at least two and probably more batteries, it was not error for the judge to have given the challenged instruction. Each parent could have been the "another" who committed an assault and battery within the meaning of the statute. See note 2, *supra*.

*Judgments affirmed.*