NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1127

COMMONWEALTH

vs.

IRA W. PROCTOR, THIRD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury waived trial in the District Court, the defendant was convicted of permitting bodily injury to a child, as a lesser included offense of permitting substantial bodily injury to a child.  See G. L. c. 265, § 13J (b), third par.  The defendant appeals, arguing that the evidence was insufficient to establish that he had the requisite wanton or reckless intent and that he was convicted of a crime not charged in the complaint.[1]  We affirm.

---

[1] The defendant also argued that the District Court's electronic docket incorrectly reflected that he was convicted of a felony, rather than a misdemeanor.  After oral argument we granted the defendant leave to file a motion to correct the electronic docket directly with the District Court.  The defendant has since filed such a motion, which the District

Background.  We recite the facts in the light most favorable to the Commonwealth.  See Commonwealth v. Tavares, 484 Mass. 650, 651 (2020).

The defendant is the father of the child in question, who was born in January 2015.  On March 1, 2015, at around 4:20 A.M., the child's mother brought the child to a hospital emergency room to be seen for an arm injury.  Diagnostic imaging revealed that the child had a spiral fracture[2] of his right humerus.  This raised concerns for possible abuse because "long-bone fractures," such as humerus fractures, are unusual in infants who are nonambulatory.

During a police interview that evening, the defendant gave the following account of how the injury occurred.  The defendant, who did "all the night feedings," had picked up the child to feed him at 3:30 A.M.  As the defendant reached for a blanket with one hand, the child "squirmed and he twisted."  The defendant "grabbed" the child with his second hand and felt a "crack."  The defendant woke up the child's mother, and they put the child in the car and took him to the hospital.

---

Court allowed.  We therefore need not address this issue further.

[2] As a physician explained at trial, a spiral fracture is a break that "goes all the way around" the bone.

At trial the Commonwealth offered the testimony of several medical experts who opined that the child's injury was not consistent with an accident. Dr. Samuel Connolly, who treated the child in the emergency room, testified that "breaking a long-bone requires a lot of force," that a long-bone fracture in a nonambulatory infant "immediately raises a concern for possible abuse," and that the nature of the child's injury was not consistent with the defendant's version of events. Likewise, Dr. Bonnie Mathews, who treated the child later that night, opined that the child's injury was not consistent with the defendant's version of events, explaining that an eight-week-old, nonambulatory infant "should not have injuries to that severity" and that "a significant amount of force" would be required to cause that type of fracture. Another treating physician, Dr. Kimberly Schwartz, similarly testified that "a twisting kind of mechanism" would be required to cause the fracture, involving an amount of force outside "the normal care of infants."

Discussion. 1. Sufficiency of the evidence. We review a challenge to the sufficiency of the evidence to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (quotation and citation omitted). Commonwealth v. Latimore, 378

3

Mass. 671, 677 (1979). The Commonwealth can meet its burden of proof by relying entirely on circumstantial evidence, and "the inferences a [factfinder] may draw from the evidence need only be reasonable and possible and need not be necessary or inescapable" (quotation and citation omitted). Commonwealth v. Linton, 456 Mass. 534, 544 (2010).

To sustain the conviction, the Commonwealth had the burden of proving that (1) the defendant had care and custody of a child, (2) the child was under fourteen years of age, (3) the child suffered bodily injury, and (4) the defendant wantonly or recklessly permitted the child to suffer bodily injury. See G. L. c. 265, § 13J (b), third par. Cf. Commonwealth v. Robinson, 74 Mass. App. Ct. 752, 757 (2009) (discussing elements of offense of permitting substantial bodily injury to child under G. L. c. 265, § 13J (b), fourth par.). On appeal the defendant challenges only the fourth element, arguing that there was insufficient evidence to prove that he acted wantonly or recklessly. To satisfy this element, the Commonwealth had to show that the defendant engaged in "intentional conduct, by way either of commission or of omission where there [was] a duty to act, which conduct involve[d] a high degree of likelihood that substantial harm will result to another." Commonwealth v. Welansky, 316 Mass. 383, 399 (1944). See Robinson, supra at 759. The defendant need not have "intended the specific result

4

of [his] conduct," but need only have "intended to do the wanton or reckless act."  Commonwealth v. Hardy, 482 Mass. 416, 421 (2019).

The evidence here was sufficient to show that the defendant wantonly or recklessly permitted the fracture of the child's humerus.  The judge could have found wanton or reckless conduct based on the testimony of the Commonwealth's medical experts, who opined that a significant amount of force would have been needed to cause the fracture, which was consistent with "nonaccidental trauma or inflicted injury."  Although the defendant claims that "routine childcare" cannot be considered wanton or reckless, that argument asks us to view the evidence in the light most favorable to him, which we cannot do.  The judge could have credited the opinions of the medical experts that the amount of force needed to cause the child's fracture was outside "the normal care of infants" and did not align with the defendant's explanation of how the injury occurred.  In turn, and given the defendant's admission to the police that he was alone with the child at the time, the judge could have found that the defendant engaged in conduct that "involve[d] a high degree of likelihood that substantial harm [would] result to" the child.  Welansky, 316 Mass. at 399.  See Robinson, 74 Mass. App. Ct. at 759 (evidence sufficient to show that defendant wantonly or recklessly delayed seeking medical care for child,

5

where physician testified that child's infection would have caused significant pain for weeks and "jury were free to discount [defense witnesses'] accounts of a pain-free illness in favor of the medical testimony"); Commonwealth v. Garcia, 47 Mass. App. Ct. 419, 423 (1999) (evidence sufficient to show wanton or reckless conduct where child "suffer[ed] injuries of a type that [were] inconsistent with the explanation given by the custodians and not attributable in the circumstances to ordinary accidental causes" [quotation and citation omitted]).

To the extent the defendant argues that his conviction cannot stand because he presented evidence that the child's fracture was the result of underlying medical conditions, we disagree. Putting aside that the defendant did not move for a required finding of not guilty at the close of all the evidence, he would have needed to show deterioration to prevail on such a motion. See Commonwealth v. O'Laughlin, 446 Mass. 188, 198 (2006). Deterioration occurs where the Commonwealth's evidence "is later shown to be incredible or conclusively incorrect." Id. at 203, quoting Kater v. Commonwealth, 421 Mass. 17, 20 (1995). Although the defendant's expert testified that the child had certain medical conditions that made him more susceptible to fractures, this did not cause the Commonwealth's case to deteriorate, as the judge was entitled to discredit the expert's testimony. See Commonwealth v. Robinson, 103 Mass.

App. Ct. 361, 366 (2023). Moreover, the Commonwealth presented expert evidence that contradicted the defense's theory. It was within the province of the judge as factfinder to determine what credibility and weight to give to this conflicting evidence. See id.

2. Crime not charged in complaint. The defendant next argues that his conviction must be reversed because he was charged with "permitting" bodily injury to a child, but the evidence at trial could only support battery. As his argument goes, a conviction for "permitting" bodily injury under G. L. c. 265, § 13J (b), "is only established by a battery if it [is] committed by another person and the defendant recklessly permits that battery"; there was no evidence that anyone other than the defendant could have caused the child's fracture; and so his conviction must have been based on battery, which was not charged in the complaint. This argument falters in light of the plain language of the statute, which criminalizes "wantonly or recklessly permit[ting] bodily injury to [a] child or wantonly or recklessly permit[ting] another to commit an assault and battery upon such child, which assault and battery causes bodily injury" (emphasis added). G. L. c. 265, § 13J (b), third par. The use of the disjunctive "or" establishes that the crime can be committed in two ways, the first of which does not require that "another" person have caused the injury. Thus, the

7

defendant's claim that the offense requires proof of a battery committed by another person -- which is the sole statutory interpretation claim he raises -- is not a basis for reversing his conviction.  See Commonwealth v. Mendes, 457 Mass. 805, 810-811 (2010), quoting Massachusetts Broken Stone Co. v. Weston, 430 Mass. 637, 640 (2000) ("Where the language of a statute is clear, courts must give effect to its plain and ordinary meaning . . .").

Judgment affirmed.

By the Court (Blake, C.J.,
  Shin & Wood, JJ.[3]),

Clerk

Entered: June 16, 2026.

---

[3] The panelists are listed in order of seniority.