COMMONWEALTH *vs.* PETER BOHMER & another.[1]

Middlesex. May 3, 1977. — February 15, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & ABRAMS, JJ.

*Due Process of Law,* Vagueness of statute. *Statute,* Validity. *Constitutional Law,* Freedom of speech. *Evidence,* Relevancy and materiality. *School. Practice, Criminal,* Charge to jury, Public trial.

G. L. c. 272, § 40, proscribing only wilful activity which actually creates an interruption or disturbance of the normal functioning of a school, is sufficiently definite to satisfy the notice requirements of the due process clause of the Fourteenth Amendment to the Federal Constitution. [371-373]

G. L. c. 272, § 40, merely insulating schools from wilful activity which so significantly disrupts their functioning as to impair the accomplishment of their educational goals, does not extend its prohibitions to activity protected by the First Amendment to the Federal Constitution, and is constitutional. [373-375]

At the jury trial of defendants charged with violations of G. L. c. 272, § 40, where evidence indicated that the disruption of two classrooms of a school was caused by the defendants' intrusion and their resistance to efforts to silence and remove them, but significant evidence was lacking of expressive speech or conduct subject to protection under the First Amendment to the Federal Constitution, the minimal speech involved did not require an instruction limiting conviction to speech or conduct not constitutionally protected [375-377]; and application of the statute to the defendants' activity did not violate the First Amendment [377].

---

[1] George Katsiaficas.

At a trial for violations of G. L. c. 272, § 40, evidence relevant to the specific intent of the defendants was properly excluded on evidence that their acts were intentional. [377]

At a jury trial for violations of G. L. c. 272, § 40, there was no error in the judge's charge in not giving an instruction to return guilty verdicts only on findings that the defendants had a specific intent to disturb school classes [378]; in giving an instruction that the Massachusetts Institute of Technology was a school within § 40 [378]; in disclosing that the defendants had been convicted on the same charges in a District Court, accompanied by a correct statement on the presumption of innocence and that no weight should be given to such convictions [378-379]; or in instructions as to guilt of joint actors, followed by an instruction limiting conviction to a finding "that that particular defendant did willfully interrupt or disturb a classroom" [379-380].

At the jury trial of a defendant charged with violations of G. L. c. 272, § 40, there was no abuse of discretion on the part of the judge in the exclusion from the court room of the brother of the defendant for causing a disturbance, following laughing and snickering and a warning of exclusion. [380-381]

COMPLAINTS received and sworn to in the Third District Court of Eastern Middlesex on January 30, 1970.

On appeal to the Superior Court the cases were tried before *Johnson*, J., a District Court judge sitting under statutory authority.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Matthew H. Feinberg* for the defendants.

*Sheila Ryan*, Legal Assistant to the District Attorney, & *Peter W. Agnes, Jr.*, Assistant District Attorney, for the Commonwealth.

QUIRICO, J. This case is before us on a bill of exceptions challenging the defendants' convictions of wilfully interrupting or disturbing a school in violation of G. L. c. 272, § 40.[2]

---

[2] The statute, which as originally enacted was entitled "An Act to prevent disturbances of schools and public meetings," St. 1849, c. 59, provides in part: "Whoever wilfully interrupts or disturbs a school or other assembly of people met for a lawful purpose shall be punished by imprisonment for not more than one month or by a fine of not more than fifty dollars. . . ." G. L. c. 272, § 40, as appearing in St. 1969, c. 463, § 1.

The defendants question the constitutionality of the statute, both on its face and as applied, and challenge certain of the trial judge's evidentiary rulings, his instructions to the jury, and his exclusion of the brother of one of the defendants from the court room. We hold that there was no error, and we affirm.

The evidence most favorable to the prosecution is summarized. The convictions arose out of two incidents at the Massachusetts Institute of Technology (MIT). On January 16, 1970, the defendant Peter Bohmer entered the classroom of MIT Professor John Wulff, while class was in progress, apparently in order to make an announcement. Bohmer attempted to address the students but Wulff cut him off and ordered him out of the room. George Katsiaficas[3] then entered and attempted to distribute leaflets, and Bohmer again began speaking. Wulff demanded that both of them leave. When Bohmer attempted a third time to speak, Wulff again ordered him to be silent and called on members of the class for help. Two students responded and ushered the defendants out of the classroom.

Later the same day the defendants entered another MIT classroom while a class was being conducted. The teacher, Professor Edwin Bransome, asked the defendants if he could help them. Bohmer stated that he wished to address the class. Bransome refused, but Bohmer nevertheless began to speak. Bransome then made an attempt to lead Bohmer out the door. Words were exchanged, Bohmer telling Bransome to "take your hands off me," and Bohmer requested that the professor allow the class to decide for itself whether the defendants should be allowed to speak. Bransome also refused this request, and led both Bohmer and Katsiaficas out of the room. When the door was closed on Katsiaficas's foot an exchange of name-calling ensued. Both incidents lasted approximately five minutes, and class resumed after each one.[4]

---

[3] It appears from the record that at the time of these events both Bohmer and Katsiaficas were MIT students.

[4] Witnesses for the defense testified that neither defendant spoke after entering the classrooms until spoken to by the professor, and that neither

Criminal complaints were filed by Professors Wulff and Bransome against the two defendants, charging each with wilfully interrupting and disturbing a school in violation of G. L. c. 272, § 40. After appealing a District Court conviction, the defendants were convicted by a jury in the Superior Court.[5] They appealed the conviction, and we ordered direct appellate review. G. L. c. 211A, § 10 (A).

1. The defendants first contend that G. L. c. 272, § 40, is void for vagueness,[6] and that their conviction under it is therefore a denial of their right to due process of law under the Fourteenth Amendment to the Constitution of the United States.

Due process requires that a criminal statute be sufficiently clear to give notice of the conduct that it prohibits. A "statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must

---

physically resisted the efforts to remove them from the rooms. Evidence was also introduced that the events in the Wulff classroom took from one to two and one-half minutes, while those in the class of Professor Bransome took one and one-half minutes.

[5] The District Court judge sentenced both defendants to one month in a house of correction on each complaint, the sentences to run concurrently. After their conviction in the Superior Court, they were again sentenced to one month on each complaint. The judge in the Superior Court, however, ordered that the sentences run consecutively.

[6] The defendants characterize their claim as a facial attack on the statute. However, in the context of a vagueness challenge, the defendants have no standing to assert the rights of others. *Young* v. *American Mini Theatres, Inc.*, 427 U.S. 50, 59 (1976). *Broadrick* v. *Oklahoma*, 413 U.S. 601, 608 (1973). They may properly contend that the statute contains no standards and thus, as applied to them, does not provide sufficient notice to satisfy due process requirements. See *Smith* v. *Goguen*, 415 U.S. 566, 577-578 (1974); *Coates* v. *Cincinnati*, 402 U.S. 611, 614 (1971). Where, however, a statute clearly proscribes some conduct, but is vague as to its reach over other acts, a defendant charged with conduct that falls into the first category, a so called hard-core violator, is not entitled to raise a vagueness challenge. *Smith, supra.* If the claimed vagueness of a statute, in addition to providing due process notice problems, also threatens rights protected by the First Amendment to the Constitution of the United States, then an overbreadth challenge may be proper. Only in the context of an overbreadth challenge may a party assert the rights of others. See *Broadrick* v. *Oklahoma, supra* at 607-615.

necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." *Connally* v. *General Constr. Co.,* 269 U.S. 385, 391 (1926). *Commonwealth* v. *Carpenter,* 325 Mass. 519, 521 (1950). Due process requirements also mandate that no statute have such a standardless sweep that arbitrary and discriminatory enforcement by the police and the courts is permitted. *Commonwealth* v. *A Juvenile,* 368 Mass. 580, 595 n.15 (1975). *Grayned* v. *Rockford,* 408 U.S. 104, 108-109 (1972). "It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large." *Smith* v. *Goguen,* 415 U.S. 566, 573 n.9 (1974), quoting from *United States* v. *Reese,* 92 U.S. 214, 221 (1875).

However, since words are the elements that constitute a statute, mathematical precision in the definition of legislative enactments is not required. *Grayned, supra* at 110. A statute is satisfactory so long as it clearly indicates what it prohibits as a whole. *Id.* "A law is not vague, however, if it requires a person to conform his conduct to an imprecise but comprehensible normative standard so that men of common intelligence will know its meaning." *Commonwealth* v. *Orlando,* 371 Mass. 732, 734 (1977). Uncertainty as to whether marginal offenses are included within the coverage of a statute does not render it unconstitutional if its scope is substantially clear. *Commonwealth* v. *Jarrett,* 359 Mass. 491, 496-497 (1971). *United States Civil Serv. Comm'n* v. *National Ass'n of Letter Carriers,* 413 U.S. 548, 579 (1973).

We conclude that G. L. c. 272, § 40, is sufficiently definite to satisfy the notice requirements of the due process clause.[7] The statute proscribes only such activity as actually creates an interruption or disturbance of the normal functioning of a school. Because of the limited scope of the stat-

---

[7]The statute has been previously construed by this court only once, in the case of *Commonwealth* v. *Porter,* 1 Gray 476 (1854), but that opinion has little bearing on the issues presented here.

ute's application, viz., to disturbances in schools or other public meetings, the degree of interruption necessary to constitute a violation is easily measured by its impact on, and incompatibility with, the functioning of such institutions. *Grayned, supra* at 112. Additionally, the statute requires that the acts which cause the disturbance be wilfully done. We believe that these limitations on the scope of the statute provide a person of common intelligence with sufficient notice of what the law prohibits; due process requirements are therefore satisfied.[8]

2. The defendants also attack the school disturbance statute on overbreadth grounds, contending that it is invalid on its face because it punishes activities that are constitutionally protected.

Generally a litigant is not allowed to challenge the application of a statute to himself on the basis that it might be unconstitutional as it applies to others. *Commonwealth* v. *LaBella,* 364 Mass. 550, 553 (1974). *Broadrick* v. *Oklahoma,* 413 U.S. 601, 610 (1973). However an exception to this traditional rule of standing has been recognized in certain limited circumstances where a case arises under the First Amendment. *United States* v. *National Dairy Prods. Corp.,* 372 U.S. 29, 36 (1963). This exception is based on an overriding interest in preventing any "chill" on the exercise of First Amendment rights. *Id.* As a result of the exception, a criminal defendant may, in certain circumstances, attack a statute on its face because it prohibits conduct protected by the First Amendment, even though his own conduct is clear-

---

[8] Questions similar to those raised here were recently passed on by the Supreme Court of the United States in *Grayned* v. *Rockford,* 408 U.S. 104 (1972). In that case the defendants were convicted under a statute that provided in part: "[N]o person, while on public or private grounds adjacent to any building in which a school or any class thereof is in session, shall willfully make or assist in the making of any noise or diversion which disturbs or tends to disturb the peace or good order of such school session or class thereof. . . ." *Id.* at 107-108. The Court rejected a vagueness challenge to the statute, holding that the necessity of wilful conduct, as well as of a significant disturbance of school activity, provided sufficient definition to satisfy due process requirements. *Id.* at 111-114.

ly not so protected. *Dombrowski* v. *Pfister,* 380 U.S. 479, 486 (1965). Such a facial overbreadth attack is allowed where the statute challenged is incapable of being construed so as to limit its applicaion to unprotected activity, and where it presents a real and substantial deterrent to protected expression. *Young* v. *American Mini Theatres, Inc.,* 427 U.S. 50, 60 (1976). *Erznoznik* v. *Jacksonville,* 422 U.S. 205, 216 (1975). Because we conclude that G. L. c. 272, § 40, does not substantially deter the exercise of First Amendment rights, we reject the overbreadth challenge made by the defendants in this case.

The free speech clause of the First Amendment protects expressive speech or conduct from governmental regulation. This protection is not, however, absolute, since "reasonable 'time, place and manner' regulations may be necessary to further significant governmental interests, and are permitted." *Grayned, supra* at 115. Whether such regulations are reasonable depends on "whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time." *Grayned, supra* at 116.

The regulation of expressive conduct within the special characteristics of the school environment is an issue of particular sensitivity. First Amendment rights must be zealously guarded in our schools in order to promote the free exchange of ideas that is central to the development of this country's younger citizens. *Keyishian* v. *Regents of Univ. of the State of N.Y.,* 385 U.S. 589, 603 (1967). *Shelton* v. *Tucker,* 364 U.S. 479, 487 (1960)." The vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools." *Shelton* v. *Tucker, supra* at 487. It is also of importance, however, to preserve a measure of order in our schools so that an atmosphere favorable to education can be maintained. See *Grayned, supra* at 119.

The problem presented by these competing factors has recently been considered by the Supreme Court of the United States in *Tinker* v. *Des Moines Independent Community School Dist.,* 393 U.S. 503 (1969), and *Grayned* v. *Rock-*

*ford, supra.* In the *Tinker* case, public school children in Des Moines, Iowa, were suspended from classes because they wore black armbands in protest against the United States participation in the war in Vietnam. The protesting students did not engage in any conduct that was "actually or potentially disruptive," *Tinker, supra* at 505, or that materially or substantially interfered with school discipline or the rights of others. *Id.* at 512-514. As a result the Court held that their activity was protected by the First Amendment and could not be regulated by school authorities. *Id.* The same standard of review was applied in the *Grayned* case, where the Court upheld against an overbreadth attack an ordinance that made it a crime for anyone, while on grounds adjacent to a school building, to "willfully make or assist in the making of any noise or diversion which disturbs or tends to disturb the peace or good order of [a] school session or class thereof. . . ." *Grayned, supra* at 107-108. The Court concluded that this ordinance, notwithstanding the fact that it had not been construed by the State courts, *Grayned, supra* at 109-110, met the test established in *Tinker.* It stated that the ordinance was "narrowly tailored to further Rockford's compelling interest in having an undisrupted school session conducive to the students' learning, and does not unnecessarily interfere with First Amendment rights." *Id.* at 119.

We conclude that the school disturbance statute challenged here, similar to that questioned in *Grayned,* does not extend its prohibitions to activity protected by the First Amendment and is constitutional. The statute does not prohibit expressive conduct or speech that is compatible with the free flow of ideas essential to the learning process. It merely insulates the schools from activity that so significantly disrupts their functioning as to impair the accomplishment of their educational goals. No constitutional protection extends to conduct, whether it be expressive or otherwise, that materially obstructs the operation of the schools.

3. The defendants also argue as ground for reversal that the instructions to the jury were in error because they al-

lowed a conviction on the basis of constitutionally protected activity. This argument fails because there is a lack of significant evidence of expressive speech or conduct on the part of the defendants. If a jury instruction defines as criminal both activity that is protected by the First Amendment and activity that is unprotected, and evidence of both classes of conduct has been presented to the jury, an ensuing conviction would have to be set aside because of the possibility that it rested on an unconstitutional ground. *Bachellar* v. *Maryland*, 397 U.S. 564, 571 (1970). That, however, is not the situation in the present case. There was no evidence before the jury in this case that the interruption resulted from speech or conduct that was expressive and thus subject to First Amendment protection. This was not a situation where the disturbance was caused by the speech of the defendant, see, e.g., *Terminiello* v. *Chicago*, 337 U.S. 1 (1949), or by conduct that conveyed a message, see, e.g., *Tinker, supra*. Rather, the evidence here indicates that the disruption was caused by the defendants' intrusion into the two classrooms and their resistance to efforts to silence and remove them. Neither party contended that the minimal speech involved was the basis for the prosecution, and we do not feel that it played a significant enough part in the incidents alleged to warrant a limiting instruction from the judge.[9] See *Commonwealth* v. *Richards*, 369 Mass. 443, 449-450 (1976). The fact that some speech occurred does not bring the otherwise unprotected conduct of the defendants within the ambit of the First Amendment. *Id.* Therefore, regardless of any overbreadth in the jury instruction, the absence of evidence of expressive conduct on which the jury

---

[9] The evidence indicated that the defendants never said anything fully in Professor Wulff's classroom, except to ask if they could request the class's opinion as to whether they should be allowed to speak. It appears that Katsiaficas also handed out one leaflet. In the Bransome classroom Bohmer asked if he could talk to the class about a particular matter, and asked that the class be allowed to decide. He also told Bransome to remove his hands from his, Bohmer's, arm when the professor tried to remove the defendants from the room. Some name-calling occurred when Katsiaficas's foot was shut in the door.

might have rested their decision precludes a reversal on this basis.

For the same reasons we reject the claim that the application of the statute to the defendants' activity violates the First Amendment. The disturbances charged here resulted from nonexpressive conduct, and thus no constitutional violation exists.

4. The defendants next argue their exceptions to certain evidentiary rulings. They challenge the exclusion of (a) their own testimony to the effect that they did not intend to cause a disturbance, (b) the testimony of a MIT professor that, on the same day as the incidents charged, they had left his classroom quietly after having been refused permission to address the class, and (c) the testimony of a second MIT professor that classroom announcements at MIT were not an unusual occurrence. This excluded evidence was offered to show that the defendants did not possess a specific intent to disturb the school proceedings. The wilfulness requirement of G. L. c. 272, § 40, demands, however, only that the acts of the defendants be wilfully performed; so long as the acts were intentional and not due to accident or inadvertence, the requirement is satisfied. *Commonwealth* v. *Porter,* 1 Gray 476, 480 (1854). The possession of a specific intent to cause a disturbance is not an element of the crime.[10] Therefore, the evidence, all of which was offered for its relevance to the issue of the specific intent of the defendants, was properly excluded. See *Kramer* v. *John Hancock Mut. Life Ins. Co.,* 336 Mass. 465, 467 (1957).

5. It is also argued by the defendants that there were several errors in the judge's charge.

They contend, first, that the instructions incorrectly defined the wilfulness necessary for a violation of G. L. c. 272,

---

[10] Of the States that have decided this question, Alabama and Arkansas have held that the specific intent to disturb is not an element of the crime, see *Salter* v. *State,* 99 Ala. 207, 208-209 (1892); *West* v. *State,* 105 Ark. 175, 179 (1912); while North Carolina appears to hold to the contrary, *State* v. *Wiggins,* 272 N.C. 147, 154 (1967), cert. denied, 390 U.S. 1028 (1968).

§ 40. Although the charge might properly have been more thorough in this regard, we conclude that it was adequate, in light of the evidence presented to the jury.[11] For the reasons already discussed above,[12] we reject the defendants' contention that the jury should have been instructed to return a guilty verdict only if they found that the defendants had a specific intent to disturb the classes.

We also reject the defendants' argument that the judge improperly instructed the jury that MIT was a school within the meaning of G. L. c. 272, § 40. This court, in *Commonwealth* v. *Porter*, 1 Gray 476 (1854), stated that disturbances within colleges were covered by the statute. *Id.* at 477. We see no reason to depart from that position now.

It is next argued that the judge erred in informing the jury that the defendants had been convicted of these same charges, in a District Court, prior to their de novo appeal.[13] The defendants assert that the presumption of innocence to

---

[11] The entire instruction on wilfulness consisted of the following: "So if you find in any one of the complaints that you have before you that that particular defendant did willfully interrupt or disturb a classroom of either Professor Wulff or Professor Bransome, then it is your duty to find him guilty as charged. If you find, of course, by the same token that they did not willfully interrupt or disturb the class in said MIT, then, of course, you must find them not guilty.

Now, a person can be guilty even though there is no evidence that he says, 'I am willfully interrupting or disturbing this class.' He does not say that. But a person is presumed to intend the natural consequences of his act."

Since the evidence in this case contained no basis for a finding that the actions of the defendants were accidental, the instruction was sufficient.

[12] See *supra* at 377.

[13] The jury were instructed in part: "The fact that these people here, these defendants, were brought before a District Court Judge who found them guilty as charged; the fact that they appealed that conviction to a jury of 12; the fact that they are defendants in this action, the law says that you are to draw no inferences of guilt based on just those things but rather you are to decide the guilt or innocence of these defendants based on the evidence that you have heard in this case; and also based on any reasonable inferences that you care to draw with regard to the facts that you find to be so in this case." The judge also charged the jury separately on the presumption of innocence.

which they were entitled was seriously prejudiced by this instruction. Although we have reservations about the wisdom of giving the jury this information (see *Ludwig* v. *Massachusetts*, 427 U.S. 618, 637 [1976] [Stevens, J., dissenting]) in the context of the instruction considered as a whole the mention of the convictions was not error. Cf. *Andres* v. *United States*, 333 U.S. 740, 744-745 (1948). The judge correctly informed the jury that the defendants are to be presumed innocent until evidence is introduced to the contrary, and that no weight should be given to the District Court convictions. We have held that such an instruction was sufficient in the somewhat analogous situation where the jury were informed of the grand jury's conclusion of probable guilt by indicting a defendant. *Commonwealth* v. *Powers*, 294 Mass. 59, 63-64 (1963). See *Commonwealth* v. *Madeiros*, 255 Mass. 304, 316 (1926). We have stated many times that the presumption of innocence requires no more than a statement to the jurors that a District Court finding of guilty is not to be considered against the accused. E.g., *Commonwealth* v. *Devlin*, 335 Mass. 555, 569 (1957); *Commonwealth* v. *Madeiros*, *supra* at 316; *Commonwealth* v. *DeFrancesco*, 248 Mass. 9, 13 (1924); see *Commonwealth* v. *Boyd*, 367 Mass. 169, 187-189 (1975). This exception is therefore overruled.

The defendants also claim error in that part of the jury instruction that described the guilt of joint actors. The language of this part of the charge was somewhat confusing, but we think that it was sufficient when read in light of another portion of the instruction which limits conviction to the situation where the jury find "that that particular defendant did willfully interrupt or disturb a classroom." "The sufficiency and correctness of instructions to a jury are to be determined by consideration of the charge as a whole, and not on the basis of fragments lifted from context and then subjected to scrutiny as though each fragment had to stand or fall on its own without the aid of the remainder of the charge." *Commonwealth* v. *Whooley*, 362 Mass. 313, 319 (1972). *Commonwealth* v. *McInerney*, 373 Mass. 136,

149 (1977). *Commonwealth* v. *Aronson*, 330 Mass. 453, 457 (1953).

6. The defendants contend finally that their right to a public trial was violated by the exclusion of Bohmer's brother from the court room during part of the proceeding. It has been the universal practice of our courts to provide open trials, unless a statute demands otherwise. *Commonwealth* v. *Blondin*, 324 Mass. 564, 569-571 (1949), cert. denied, 339 U.S. 984 (1950). *Ottaway Newspapers, Inc.* v. *Appeals Court*, 372 Mass. 539, 546 (1977). We have recently held that the public trial guaranty of the Sixth Amendment to the Constitution of the United States is applicable to the courts of the Commonwealth under the Fourteenth Amendment. *Commonwealth* v. *Marshall*, 356 Mass. 432, 435 (1969). This guaranty, the importance of which cannot be overstated, exists primarily to prevent the courts from becoming instruments of persecution. *In re Oliver*, 333 U.S. 257, 270 (1948). "The knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power." *Id.*[14]

This right to a public trial is not, however, absolute and inflexible. We have recognized the power of a judge to exclude spectators from trials involving particularly sordid sexual offenses. *Commonwealth* v. *Blondin*, 324 Mass. 564, 570-573 (1949). The judge must also have the power to maintain order in court proceedings so that the administration of the criminal law will be fair and just. See *Illinois* v. *Allen*, 397 U.S. 337, 343 (1970). As a corollary to this power a judge has the authority to exclude spectators whose presence intimidates the witnesses, see *United States ex rel.*

---

[14] Other reasons for holding trials in the view of the public exist. Witnesses are encouraged to be more truthful, and other people with relevant information, as yet unknown to the parties, become aware of the proceedings and make themselves available to testify. Additionally, the openness of trials allows spectators to learn about the operation of the judicial system and acquire confidence in its remedies. 6 J. Wigmore, Evidence § 1834, at 435-438 (Chadbourn rev. 1976).

*Laws* v. *Yeager,* 448 F.2d 74, 79-81 (3d Cir. 1971), cert. denied, 405 U.S. 976 (1972), or who conduct themselves in a manner that disrupts the order and decorum of the proceeding. See *United States ex rel. Orlando* v. *Fay,* 350 F.2d 967, 970-971 (2d Cir. 1965), cert. denied sub nom. *Orlando* v. *Follette,* 384 U.S. 1008 (1966); *United States* v. *Kobli,* 172 F.2d 919, 922 (3d Cir. 1949); *State* v. *Genese,* 102 N.J.L. 134, 142 (1925); 6 J. Wigmore, Evidence § 1835, at 443 (Chadbourn rev. 1976).

The record before us indicates that the removal of Bohmer's brother was preceded by laughing and snickering in the court room. The judge warned the spectators that exclusion from the court room would result if the noise continued. There is no claim that the brother was removed for any reason other than that he was causing a disturbance. The significant interest of a defendant in having relatives and friends present at his trial, *Marshall, supra* at 434-435, may be outweighed by the need to exclude spectators who disrupt the proceedings. We find no abuse of the judge's discretion on the facts presented here.

7. Having considered all of the exceptions raised by the defendants before this court, we find no error.

*Exceptions overruled.*