COMMONWEALTH vs. JEANNE CHAPMAN.

Barnstable. December 4, 2000. - March 15, 2001.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & SOSMAN, JJ.

*Wanton or Reckless Conduct. Constitutional Law,* Vagueness of statute. *Due Process of Law,* Vagueness of statute. *Practice, Criminal,* Instructions to jury. *Words,* "Substantial bodily injury."

This court concluded that the term "substantial bodily injury" as defined in G. L. c. 265, § 13J, does not include death [483-484]; however, where asphyxiation by drowning causes "substantial impairment of the physical condition," even without evidence of signs of internal or external trauma, asphyxiation is a "substantial bodily injury" under G. L. c. 265, § 13J (*a*) [484-485]: consequently, a prosecution was proper under § 13J against a mother who wantonly and recklessly permitted substantial bodily injury to her ten month old infant who drowned in a bathtub when left unattended, even where a prosecution could have been brought as an indictment for involuntary manslaughter [485-486].

Cases involving wrongful death had no bearing on the interpretation of G. L. c. 265, § 13J, a criminal statute. [486]

General Laws c. 265, § 13J, was not unconstitutionally vague as applied in a prosecution for the wanton or reckless acts of a mother in leaving her infant unattended in a bathtub, such that the infant drowned, and in failing to seek immediate medical attention to revive the child. [486-487]

Evidence at the trial of an indictment alleging the defendant wantonly or reck- lessly permitted substantial bodily injury to her ten month old infant who drowned unattended in a bathtub, G. L. c. 265, § 13J, was sufficient to warrant the jury's verdict of guilty [487-489]; and there was no error in the judge's instructions on wanton or reckless conduct [489-490].

INDICTMENT found and returned in the Superior Court Depart- ment on August 11, 1998.

The case was tried before *Richard F. Connon,* J., and ques- tions of law were reported by him to the Appeals Court. The Supreme Judicial Court on its own initiative transferred the matter from the Appeals Court.

*William W. Adams* for the defendant.

*J. Thomas Kirkman,* Assistant District Attorney, for the Commonwealth.

SPINA, J. A jury found the defendant, Jeanne Chapman, guilty of wantonly or recklessly permitting substantial bodily injury to her ten month old infant, Taraea. See G. L. c. 265, § 13J.[1] Taraea drowned in a bathtub when she was left unattended by the defendant. She died shortly thereafter. The trial judge stayed the defendant's sentence and, with the defendant's consent, reported two questions to the Appeals Court, pursuant to Mass. R. Crim. P. 34, 378 Mass. 905 (1979): "1. Does the definition of substantial bodily injury included in G. L. c. 265, § 13J, include the death of a child such that the conviction in the

---

[1]General Laws c. 265, § 13J, provides:

"(*a*) For the purposes of this section, the following words shall, unless the context indicates otherwise, have the following meanings: —

" 'Bodily injury', substantial impairment of the physical condition including any burn, fracture of any bone, subdural hematoma, injury to any internal organ, any injury which occurs as the result of repeated harm to any bodily function or organ including human skin or any physical condition which substantially imperils a child's health or welfare.

" 'Child', any person under fourteen years of age.

" 'Person having care and custody', a parent, guardian, employee of a home or institution or any other person with equivalent supervision or care of a child, whether the supervision is temporary or permanent.

" 'Substantial bodily injury', bodily injury which creates a permanent disfigurement, protracted loss or impairment of a function of a body member, limb or organ, or substantial risk of death.

"(*b*) Whoever commits an assault and battery upon a child and by such assault and battery causes bodily injury shall be punished by imprisonment in the state prison for not more than five years or imprisonment in the house of correction for not more than two and one-half years.

"Whoever commits an assault and battery upon a child and by such assault and battery causes substantial bodily injury shall be punished by imprisonment in the state prison for not more than fifteen years or imprisonment in the house of correction for not more than two and one-half years.

"Whoever, having care and custody of a child, wantonly or recklessly permits bodily injury to such child or wantonly or recklessly permits another to commit an assault and battery upon such child, which assault and battery causes bodily injury, shall be punished by imprisonment for not more than two and one-half years in the house of correction.

"*Whoever, having care and custody of a child, wantonly or recklessly permits substantial bodily injury to such child or wantonly or recklessly permits another to commit an assault and battery upon such child, which assault and battery causes substantial bodily injury, shall be punished by imprisonment in the state prison for not more than five years, or by imprisonment in a jail or house of correction for not more than two and one-half years*" (emphasis added).

above-captioned case is in accordance with law? 2. Is G. L. c. 265, § 13J, as applied to the facts of this case, unconstitutionally vague and inadequate?" The defendant also appealed from the conviction, raising the same questions reported by the judge and challenging both the sufficiency of the evidence and the judge's instructions concerning the substantive offense. We transferred the case here on our own motion.

We answer the first question in the negative, concluding that "substantial bodily injury" does not include death, but add that death may be evidence of a substantial bodily injury as that term is defined by the statute. We answer the second question in the negative as well. We find no error on the defendant's additional claims and affirm her conviction.

1. *Facts.* The facts necessary to resolve the issues before us are largely undisputed. The defendant was giving her baby a bath at home at about 3:45 P.M. and stepped away from the bathroom for approximately three minutes to answer the telephone.[2] When she returned, Taraea was floating face down in the tub.[3] The defendant took the baby from the tub, laid her on the living room floor, and then telephoned a friend and asked her to babysit her three year old son so she could take Taraea to the hospital. This second telephone call lasted approximately three or four minutes. The defendant next dialed 911. Emergency personnel arrived at her home within two minutes of receiving the call. They found the baby unconscious, breathless, without a pulse, and in a life-threatening arrhythmia. The emergency crew attempted to resuscitate the baby before transferring her to a hospital but all attempts failed. Taraea was pronounced dead at 4:45 P.M. An autopsy revealed that she died of injuries consistent with a fresh water drowning.

2. *Reported Questions.*

(a) *Substantial bodily injury.* The Commonwealth proceeded on the theory that the defendant's acts and omissions constituted a single episode in which, having the care and custody of ten month old Taraea, she wantonly or recklessly permitted the

---

[2]There was some evidence that the defendant stepped away to make the telephone call herself.

[3]Testimony put the water depth at anywhere between four and eleven inches.

infant to suffer a substantial bodily injury. G. L. c. 265, § 13J
(*b*), fourth par. The judge expressed his concern that death is
not an injury within the meaning of § 13J, and the defendant
argued this point below and on appeal. We agree, but do not
find the answer dispositive of the matter.

"Substantial bodily injury" is defined in § 13J as "bodily
injury which creates a permanent disfigurement, protracted loss
or impairment of a function of a body member, limb or organ,
or substantial risk of death." G. L. c. 265, § 13J (*a*). "Bodily
injury" is in turn defined in the statute as "substantial impair-
ment of the physical condition including any burn, fracture of
any bone, subdural hematoma, injury to any internal organ, any
injury which occurs as a result of repeated harm to any bodily
function or organ including human skin or any physical condi-
tion which substantially imperils a child's health or welfare."
G. L. c. 265, § 13J (*a*). The latter defines the bodily injuries the
Legislature intended to be punishable under the statute, i.e.,
burns, fractures, injuries to internal organs, and perilous physi-
cal conditions, while the former lays the foundation for greater
sanctions based on the gravity and consequences of the bodily
injury sustained. Read together, and as relevant here, a
substantial bodily injury includes any substantial impairment of
the physical condition that causes a protracted impairment of
the function of an internal organ or a substantial risk of death.
As it appears in the context of the statute, death is not an injury,
but one risk of injury.

The defendant argues that the only injuries were the small
pinpoint hemorrhages on the baby's eyelids, a symptom of
oxygen deprivation. In her view, the bruises cannot themselves
be considered a "substantial bodily injury" under § 13J.

The defendant misconstrues the statute. Although the pete-
chial hemorrhages on the baby's eyelids may have been the
only visible signs of injury, they were not the baby's only
injuries within the meaning of the statute. The statute reaches
any "substantial impairment of the physical condition." G. L.
c. 265, § 13J. Asphyxiation, like malnutrition or dehydration,
may cause a substantial impairment of the physical condition.
As such, it is a bodily injury within the meaning of § 13J (*a*).
Where it creates a protracted impairment of heart, lung, or brain

function or a substantial risk of death, it is a substantial bodily injury under § 13J (a). Asphyxia and its concomitant loss of organ function are not necessarily caused or evidenced by visible signs of trauma. See, e.g., *Commonwealth* v. *Freeman*, 407 Mass. 279, 286 n.6 (1990) (suffocation without visible neck injuries); *Commonwealth* v. *Michaud*, 389 Mass. 491, 498 (1983) (malnutrition evidenced only by baby's being thin and pale). We conclude that prosecution under § 13J is not limited to those cases in which a child's injuries are evidenced by signs of internal or external trauma.

The defendant also argues that her conviction was improper as matter of law because the definition of "substantial bodily injury" does not include death. She relies on two opinions in which we concluded and one in which the Appeals Court concluded that the Legislature does not generally intend the term "injury" to include injuries that result in death. See *Kromhout* v. *Commonwealth*, 398 Mass. 687, 690 (1986); *Grass* v. *Catamount Dev. Corp.*, 390 Mass. 551, 554 (1983); *Zeroulias* v. *Hamilton Am. Legion Assocs., Inc.*, 46 Mass. App. Ct. 912, 914 (1999). The defendant in each case urged the application of a civil statute designed to limit an entity's or industry's liability for personal injury claims either by use of a short statute of limitation or by requiring plaintiffs to meet a higher burden of proof.[4] We declined to extend the protections of those personal injury statutes to claims for injuries that resulted in death because of divergent legislative policies underlying the availability of civil remedies for personal injury and wrongful death claims. We reasoned in each case, citing to *Gallant* v. *Worcester*, 383 Mass. 707, 714 (1981), that it was appropriate for the Legislature to provide different civil remedies for claims of wrongful death than for claims of personal injury because the former tend to be "drastic in the extreme and relatively

---

[4]See *Kromhout* v. *Commonwealth*, 398 Mass. 687, 690 (1986) (G. L. c. 81, § 18, limiting Commonwealth's liability for injuries caused by highway design defects); *Grass* v. *Catamount Dev. Corp.*, 390 Mass. 551, 554 (1983) (G. L. c. 143, § 71P, imposing two-year statute of limitations on personal injury claims against ski area operators); *Zeroulias* v. *Hamilton Am. Legion Assocs., Inc.*, 46 Mass. App. Ct. 912, 914 (1999) (G. L. c. 231, § 85T, requiring proof of wilful, wanton, and reckless conduct for personal injury claims of negligent serving of alcohol to intoxicated persons).

infrequent." *Id.* As the injuries had resulted in death, the claims in those cases had been properly brought under the wrongful death statute. G. L. c. 229, § 2.

The considerations underlying the proper application of a criminal statute are different. The Legislature "has great latitude to determine what conduct should be regarded as criminal and to prescribe penalties to vindicate the legitimate interests of society," *Commonwealth* v. *Jackson*, 369 Mass. 904, 909 (1976), as well as the resources and authority to bring defendants into court and punish those found guilty. See *Weems* v. *United States*, 217 U.S. 349, 379 (1910). The legislative policies underlying statutes that provide criminal sanctions where death or injury results have little to do with securing rights of action for private individuals and everything to do with defining degrees of culpability and the appropriate levels of punishment.

That the district attorney elected to seek an indictment under § 13J because the defendant permitted the infant to suffer a substantial bodily injury rather than an indictment for involuntary manslaughter on the basis of the infant's death, does not mean that the charge was improper. See *United States* v. *Batchelder*, 442 U.S. 114, 123 (1979) (existence of overlapping criminal statutes does not render them unconstitutional so long as each "clearly define[s] the conduct prohibited and the punishment authorized"); *Commonwealth* v. *Hudson*, 404 Mass. 282, 288 (1989) (same). Moreover, the fact that the infant ultimately succumbed as a result of her injuries was evidence that her injuries posed a substantial risk of death within the meaning of the statute. See, e.g., *Hill* v. *State*, 535 N.E.2d 153, 156 (Ind. Ct. App. 1989) (while Legislature may have wished to "invite" charges under homicide statutes in similar circumstances, "it does not follow . . . that neglect of a dependent resulting in serious bodily injury . . . cannot be charged when the injury results in death"). The conviction was in accordance with law.[5]

(b) *Vagueness.* In his second reported question, the trial judge

---

[5]Other courts have concluded that prosecution under similar statutes for substantial bodily injury was proper when the child died, but reached that result by simply stating that death *is* a substantial bodily injury. We agree with the results in these cases, but for different reasons. See, e.g., *People* v. *District Court*, 652 P.2d 582, 587 (Colo. 1982); *State* v. *Rhode*, 503 N.W.2d 27, 40 (Iowa Ct. App. 1993).

asks whether the statute is unconstitutionally vague or inadequate as applied. The defendant, amplifying the trial judge's concerns, contends that, because death is not a substantial injury under the statute, she was not on notice that Taraea's death, the result of noncriminal conduct such as bathing her infant, exposed her to criminal liability under this statute.[6]

A statute is unconstitutionally vague as applied if it would have failed to place a person of ordinary intelligence on notice that his or her actions or omissions are criminal under the statute, or if the statute fails to provide law enforcement officers with clear guidelines. See *Commonwealth* v. *Bohmer*, 374 Mass. 368, 371-372 (1978). General Laws c. 265, § 13J, satisfies this constitutional requirement.

Contrary to the defendant's contention, she was not charged with or convicted of having caused her baby's death: she was charged and convicted on the basis of her intentional acts and omissions that permitted her baby to be injured. Furthermore, she was not prosecuted for the innocent noncriminal act of bathing the infant but for the wanton or reckless act of leaving her in the bathtub unattended such that she was likely to drown, and wantonly or recklessly failing to seek immediate medical attention to help revive her. The defendant was on notice that the manner in which she conducted herself was criminal under the statute, and the statute defines the offense with sufficient specificity to prevent ad hoc or subjective enforcement. See *Grayned* v. *Rockford*, 408 U.S. 104, 108-109 (1972). The statute is not unconstitutionally vague.

3. *The Defendant's Claims of Error.*

(a) *Sufficiency of the evidence.* The defendant contends that

---

[6]General Laws c. 265, § 13J, inserted by St. 1993, c. 340, § 2, was enacted to fill a perceived gap in the law noted in *Commonwealth* v. *Raposo*, 413 Mass. 182, 189 (1992) (Abrams, J., concurring). See *Commonwealth* v. *Garcia*, 47 Mass. App. Ct. 419, 420 (1999). Justice Abrams's comments were specifically addressed to the failure of the then current laws to provide a way to hold parents and guardians liable for permitting the abuse of children in their care either physically or sexually, whether the care giver's participation was active or passive. *Commonwealth* v. *Raposo, supra* at 192 (Abrams, J., concurring). However, the circumstances leading to the enactment of a statute cannot be said to limit its scope where, on its face, the statute's reach extends beyond those original circumstances.

there was insufficient evidence to support a finding that she wantonly or recklessly acted or failed to act. She further argues that the entire incident was an accident and the Commonwealth failed to disprove this point. These claims were preserved for our review.

When considering a claim regarding the sufficiency of the evidence, we determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original). *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), quoting *Jackson* v. *Virginia*, 443 U.S. 307, 318-319 (1979).

The evidence established that the defendant intentionally left the baby unattended for approximately three minutes in water deep enough to drown, during which time the baby aspirated the bathwater. After returning to the bathroom, taking Taraea from the tub and laying her on the floor, the defendant then spent three to five additional minutes on the telephone trying to get a babysitter for her other child before dialing 911. The defendant made no attempt to revive the infant. The jury were warranted in concluding that the entire course of conduct was wanton or reckless. Contrast *Commonwealth* v. *Michaud*, 389 Mass. 491, 497 (1983) (reversing convictions of involuntary manslaughter under theory of wanton or reckless conduct and entering required findings of not guilty where twenty-four day old baby died of starvation despite uncontroverted evidence that mother was breast feeding at regular intervals). The defendant's contention that her acts and omissions were themselves accidents was a question for the jury. The Commonwealth met its burden of proof.

The defendant concedes that the infant died of asphyxiation, but contends that there was insufficient evidence to support a finding that the baby sustained a substantial bodily injury. She largely repeats her argument, noted in Part 2 (a), *supra*, that Taraea's only injury was the petechial hemorrhaging on the eyelids — signs that small blood vessels in the eyelids ruptured as a result of asphyxiation — and that these hemorrhages do not constitute a "substantial bodily injury." For reasons discussed above, we disagree.

Taraea suffered a substantial bodily injury within the meaning of the statute when her lungs filled with bathwater, which made it impossible for her to breathe or for her heart to pump effectively, depriving her brain of oxygen. The six to ten minutes between the moment the defendant found the baby in the tub and the emergency personnel began their efforts constituted a "protracted . . . impairment" of heart, lung, and brain function. This series of organ failures also created a "substantial risk of death," and the jury were warranted in so finding. *Id.* There was no error.

(b) *Jury instructions.* The defendant contends that the jury instructions on wanton or reckless conduct were flawed in two respects. The defendant objected to the charge on this element "to the extent that [it] varied from the instruction . . . put forward by the [d]efendant." This general objection was insufficient to preserve her rights on appeal because it failed to inform the judge of the specific language to which she objected, and the grounds on which such objections were being made. Mass. R. Crim. P. 24 (b), 378 Mass. 895 (1979); *Commonwealth v. McDuffee*, 379 Mass. 353, 357 (1979) ("It is a fundamental rule of practice that where a party alleges error in a charge he must bring the alleged error to the attention of the judge in specific terms in order to give the judge an opportunity to rectify the error, if any"). We review the error, if any, under the standard of a substantial risk of a miscarriage of justice. *Id.* at 358.

First, the defendant argues that, because the judge failed specifically to define negligence and gross negligence, the jury were prevented from finding her merely negligent, a finding that would have required an acquittal. The judge's instruction on wanton or reckless conduct incorporated the concepts of ordinary and gross negligence to illustrate the placement of wanton or reckless conduct on a spectrum of fault. The jury can be presumed to have a sufficient understanding of negligence and gross negligence from their collective experience for purposes of this instruction. The judge made it perfectly clear that the burden on the Commonwealth was to prove beyond a reasonable doubt that the defendant's conduct was wanton or reckless. After defining wanton or reckless conduct, the judge

stated: "Wanton or reckless conduct is not a form of negligence. If you found that the [d]efendant's conduct was ordinary negligence, or even gross negligence, then you must find the [d]efendant not guilty. In order to find the [d]efendant guilty, you must find that her conduct passed beyond the domain of ordinary negligence to conduct which was reckless or wanton . . . ." The jury charge closely tracked the approved language in *Commonwealth* v. *Welansky*, 316 Mass. 383, 397-401 (1944), and it adequately alerted the jury to the limits of legal culpability and to what the Commonwealth was required to prove. See *Commonwealth* v. *Askew*, 404 Mass. 532, 534-535 (1989).

Second, the defendant argues that the judge confused the objective and subjective aspects of wanton or reckless conduct. Jury instructions "must be construed as a whole and [consequently], isolated misstatements or omissions do not necessarily constitute reversible error." *Commonwealth* v. *Campbell*, 378 Mass. 680, 706 (1979), and cases cited.

The defendant challenges the following instruction: "If the grave danger was, in fact, realized by the [d]efendant, her subsequent voluntary conduct, be it an act or omission, which caused the harm, constitutes wanton or reckless conduct regardless of whether or not an ordinary person would have realized the gravity of the danger." This statement, rephrased twice during the course of the instructions, was given in the context of five pages of very clear instructions on the element of wanton or reckless conduct. Again, the main thrust of the judge's instructions closely tracked the language approved in *Commonwealth* v. *Welansky*, *supra*. The portion to which the defendant objects does not misstate the law: we have repeatedly held that a defendant's subjective awareness is sufficient but not necessary to convict. See, e.g., *Commonwealth* v. *Catalina*, 407 Mass. 779, 789 (1990). This part of the jury instructions cannot be materially distinguished from that well-established proposition. There was no error.

*Judgment affirmed.*