## COMMONWEALTH vs. MICHAEL PANAGOPOULOS.

No. 02-P-631.

Suffolk. November 6, 2003. - January 8, 2004.

Present: ARMSTRONG, C.J., DOERFER, & GREEN, JJ.

*Assault and Battery. Statute,* Construction. *Due Process of Law,* Vagueness of statute. *Words,* "Person having care and custody."

This court concluded that G. L. c. 265, § 13J, which punishes certain persons for wantonly or recklessly permitting substantial bodily injury to a child, was not unconstitutionally vague, where the words "person having care and custody" of a child, used in their statutory context, do not require persons of ordinary intelligence to speculate as to their meaning. [328-329]

At a criminal trial, a jury could properly conclude that a man who lived with two children and their mother for at least seven months, during which time he shared with their mother the caretaking responsibilities for the children, had "care and custody" of the children, within the meaning of G. L. c. 265, § 13J, when he participated as a joint venturer in the wanton or reckless acts that led to the children's deaths. [329-330]

INDICTMENT found and returned in the Superior Court Department on November 9, 1998.

A motion to dismiss was heard by *Elizabeth Bowen Donovan,* J., and the case was tried before *Robert A. Mulligan,* J.

*Brian J. Kelly* for the defendant.

*Jane A. Sullivan,* Assistant District Attorney (*Josh Wall,* Assistant District Attorney, with him) for the Commonwealth.

DOERFER, J. Two young children (ages three and five) lost their lives in a fire while locked in a second-floor bedroom of the apartment in which the defendant and the children's mother made their home. There was evidence that the defendant had assisted in modifying the children's bedroom door so that they could be locked in to prevent them from escaping when the defendant and mother found it inconvenient to attend to them. There was evidence that the defendant, although he was not the

biological father of the children, was not married to their mother, and was not the children's legal guardian, nevertheless had assumed the role of their father and provided for their supervision and care, both when the mother was absent and when she was home.

The defendant was convicted of two counts of violating G. L. c. 265, § 13J(*b*), fourth par., inserted by St. 1993, c. 340, § 2, which provides, in material part:

> "Whoever, having care and custody of a child, wantonly or recklessly permits substantial bodily injury to such child or wantonly or recklessly permits another to commit an assault and battery upon such child, which assault and battery causes substantial bodily injury, shall be punished."

Section 13J further defines the phrase "person having care and custody" of a child as "a parent, guardian, employee of a home or institution or any other person with equivalent supervision or care of a child, whether the supervision is temporary or permanent." *Id.* at subsection (*a*). The sole issue on appeal[1] in this case is whether G. L. c. 265, § 13J, is impermissibly vague because it fails adequately to define those persons subject to its prohibitions.

a. Only if the words used in a statute are so vague that a person of ordinary intelligence would have to guess at their meaning are they considered to be unconstitutionally vague. See *Commonwealth* v. *Bohmer*, 374 Mass. 368, 373 (1978); *Commonwealth* v. *Chapman*, 433 Mass. 481, 487 (2001). In determining this constitutional question, we may consider the context of the entire statute in which the challenged words are used. Cf. *Commonwealth* v. *Dunn*, 43 Mass. App. Ct. 58, 59 (1997) ("[w]hen examining a criminal statute for possible unconstitutional vagueness, we may go beyond the actual language of the statute to give meaning to the words and phrases according to their common law meaning or statutory history").

Here, the words used, in their statutory context, do not require

---

[1]There is no claim that the evidence was not sufficient, assuming the defendant was within the class of persons defined by § 13J, to permit the jury to find that he was a joint venturer, that his acts and omissions constituted wanton or reckless conduct, or that his acts were causally related to the injury and death of the children.

persons of ordinary intelligence to speculate as to their meaning. Persons having "care and custody" are well understood to include not only biological parents, but any persons, regardless of formal familial relationship, who have assumed either permanent or temporary responsibility for a child's care. See *People* v. *Cochran*, 62 Cal. App. 4th 826, 832 (1998); *Anderson* v. *State*, 372 Md. 285, 293-297 (2002); *People* v. *Carroll*, 93 N.Y.2d 564, 569-570 (1999).[2] As noted *supra*, the Legislature incorporated this common understanding into section 13J by including within the statute's compass "any other person with equivalent supervision or care of a child, whether the supervision is temporary or permanent." G. L. c. 265, § 13J(*a*), inserted by St. 1993, c. 340, § 2. Section 13J thus defines the offense and those subject to its penalties with sufficient specificity to prevent ad hoc or subjective enforcement. See *Commonwealth* v. *Chapman*, 433 Mass. at 487.

b. The defendant next argues, albeit not with great clarity, that he can not properly be considered a person having "care and custody" of the deceased children within the meaning of § 13J. On the contrary, the evidence presented was more than ample. Specifically, at trial, evidence was presented that the defendant had lived in the home with the children and their mother for at least seven months, during which time he shared with their mother the caretaking responsibilities for the children. The defendant took care of the children like "a father should do," and the children loved him. Moreover, the defendant testified that he "was one of the caretakers for the children" and that he was their primary caretaker when their mother was at work or was sleeping. The defendant further admitted that he had assumed primary responsibility for feeding the children, that he changed their diapers, played with them, and intended to teach one of the children how to play baseball. The defendant also routinely brought the children over to his parents' house and supervised them while they played.

On such facts the jury properly could conclude that the defendant had "care and custody" of the children, within the meaning of § 13J, when he participated as a joint venturer in the wanton or reckless acts that led to the children's unfortunate

---

[2]See also authorities discussed *infra* at part b.

deaths.[3] See *State* v. *Jones*, 188 Ariz. 388, 393-394 (1997), cert. denied, 522 U.S. 1054 (1998) (substantial evidence supported jury verdict that defendant had "care" and "custody" of child under State's child abuse statute when he "accepted responsibility" for the child; the mother and her three children moved into defendant's home three months before the child's death, "[d]efendant provided food and shelter for the family . . . acted as caregiver . . . and was, in essence, their stepfather"); *People* v. *Culuko*, 78 Cal. App. 4th 307, 335 (2000) (evidence was sufficient to support jury finding of "care and custody" where the facts demonstrated, among many things, that defendant had said "he was taking full responsibility for caring for the baby"); *Dowler* v. *State*, 547 N.E.2d 1069, 1071-1072 (Ind. 1989) (sufficient evidence of "care" where defendant assumed responsibility for child's care "sometimes alone and sometimes jointly"); *State* v. *Widdison*, 4 P.3d 100, 106-107 (Utah Ct. App. 2000), *S.C.*, 28 P.3d 1278 (Utah 2001) (finding live-in boyfriend to have "care and custody" under child abuse statute where he lived in the household for four months and during the time of the child's injuries, assumed a parental role, acted as a baby sitter and helped care for the child when the mother was out of the house).

*Judgments affirmed.*

---

[3]See note 1, *supra.*